Hillegass, Adm'r, v. Bender.

No. 8402.

HILLEGASS, ADM'R, v. BENDER.

ATTORNEY. — *Circuit Court.* — *Duties of Clerk.*—*Money.*—*Judgment.*—*Payment.*—Prior to the enactment of the act of March 9th, 1875, 2 R. S. 1876, p. 17, every attorney was bound to know that the clerks of the several circuit courts throughout this State were not authorized to receive money in payment of judgments, dues and demands of record in their respective offices.

SAME.—In such case, payment of a judgment must be made to the judgment creditor, or to some one duly authorized to act for him.

SAME.—*Power and Liability.*—The general power and liability of an attorney for a defendant cease upon the entry of a judgment finally terminating the litigation, and do not include the payment of the judgment, although he be furnished with money for the purpose.

SAME.—*Agent.*—If an attorney for a judgment defendant, prior to March 9th, 1875, received money with which to pay the judgment, and paid it to the clerk of the court, acting in good faith, and his client or principal, with full knowledge, acquiesced in his act, he was not liable as attorney, or agent, for its loss by the insolvency and death of the clerk.

SAME.—In such case, to fasten upon him the liability of an attorney, for ignorance of the law, a consultation touching the question of law, and a special employment to make the payment in pursuance of his negligent advice, must be shown.

From the Allen Circuit Court.

*R. S. Robertson* and *J. B. Harper*, for appellant.

*L. M. Ninde* and *T. E. Ellison*, for appellee.

ELLIOTT, C. J.—Samuel Bender, the appellee, was sued by Eliza Wright, and judgment rendered against him on the 25th day of June, 1872, by the Allen Circuit Court. Appellant's intestate was the attorney of the appellee in the action. Eighteen months after the judgment was rendered, money was placed in the hands of the intestate, by appellee, for the purpose of paying the judgment. The money was paid to William S. Edsall, then the clerk of Allen county, and a proper entry of satisfaction was made upon the judgment docket by Edsall. Appellee knew that the money had been paid to the

clerk, and made no objection when informed of that fact, nor did he at any time object to the mode of payment. He knew, also, that the money had not been paid to the judgment plaintiff. Edsall continued in office nine or ten months after the payment of the money to him, and died insolvent in November, 1876. No demand was made upon Edsall during his lifetime, but demand was made upon his administrator.

Appellee made claim against the estate represented by the appellant, and obtained judgment, from which this appeal is prosecuted.

Payment to the clerk of the Allen Circuit Court was not a satisfaction of the judgment against the appellee, nor was it payment to the judgment creditor. Under the statute in force in 1874, the clerk was not authorized to receive money due upon a judgment. This was so ruled in *Hays* v. *Boyer*, 59 Ind. 341. A vigorous assault is made upon this case, and we are earnestly asked to overrule it. The arguments and authorities adduced are not of such strength as to incline us to even question its soundness, much less to move us from the rule of *stare decisis.* Substantially the same doctrine had been declared in an earlier case, that of *Carey* v. *State, ex rel.*, 34 Ind. 105, for it was there clearly stated that a clerk had no right to receive money unless so directed by order of court, or so authorized by statute. Other cases had stated the question, but had not decided it. *Prather* v. *State Bank*, 3 Ind. 356; *Armsworth* v. *Scotten*, 29 Ind. 495; *Jenkins* v. *Lemonds*, 29 Ind. 294; *Carey* v. *State, ex rel.*, 34 Ind. 105; *Crews* v. *Ross*, 44 Ind. 481.

A lawyer is liable for a negligent omission to perform a plain duty. Upon this ground rests the decision in *Stott* v. *Harrison*, 73 Ind. 17. In that case the duty was a plain one; there were no doubtful questions of law for decision, nor any conflicting mode of procedure to embarrass or mislead. A lawyer is not liable for every mistake. He is not liable for a mistake committed in matters where the law is doubtful and uncertain. " God forbid," said ABBOTT, C. J., " that it should

be imagined that an attorney, or a counsel, or even a judge, is bound to know all the law." Nor is the lawyer bound to bring to the practice of his profession the highest skill and learning. He is bound to possess and exercise competent skill, and if he undertakes the management of a law affair, and neither possesses nor exercises reasonable knowledge and skill, he is liable for all loss which his lack of capacity or negligence may bring upon his client. "What an attorney does profess and undertake, and all that he professes and undertakes, is, first, that he possesses the knowledge and skill common to members of his profession, and, second, that he will exercise, in his client's business, an ordinary and reasonable degree of attention, prudence, and skill." Shearman & Redf. Neg., section 211. *Reilly* v. *Cavanaugh,* 29 Ind. 435; *Caverly* v. *McOwen,* 123 Mass. 574. The man who professes to act as a lawyer must be acquainted with the settled rules of law and the practice of the courts prevailing in the locality wherein he practices. "For this purpose," to borrow the language of a late writer, "there must be a familiarity with the adjudicated local law as well as the statute law bearing on the particular point; and there must be a knowledge of the legal machinery necessary for the application of this law. To undertake the management of a case without such knowledge is negligence which makes the lawyer liable for any loss which his client may thereby incur." Whart. Negligence, section 749. Another author thus states the rule: "The law requires an attorney to be acquainted with the practice of his court, with the ordinary rules of pleading and evidence, the existence of statutes and rules of court, and in cases free from doubt, with their construction also." Weeks on Attorneys, 474, section 285.

It is the duty of a lawyer to know whether public matters, such as the duties of the officers connected with the court in which he practices, are regulated by statute. A lawyer who does not know whether the duties of the clerk of the court in which his professional duties are performed are, or are not, de-

fined by statute, can not be deemed to possess competent skill. It is a lawyer's duty to know the elementary rules of law upon familiar matters of practice, as well as the settled rules governing matters which spring out of the ordinary transactions of every-day life, and which are of frequent application. A rudimental knowledge of the law would have acquainted the appellant's intestate with the elementary rule, that payment must be made to the creditor, or to some one duly authorized to act for him. A rule so long settled and so familiar ought to be known to all who assume the character of lawyers. A knowledge of the statutes would have shown the intestate that there was in them no provision changing the familiar and long established rule. It must be held that if the intestate was the appellee's attorney when he paid the money to Edsall, and paid it as his attorney, a right of action accrued to the appellee, because competent skill was either not possessed, or was not exercised.

Was the intestate appellee's attorney at the time the money was paid to Edsall? The evidence does not show the specific terms of the employment. The testimony of the only witness introduced by the appellee is thus given in the bill of exceptions: "I am a son of the plaintiff. I paid Joseph D. Hillegass, since deceased, $50 in 1873, and $220 in 1874, to be applied on a judgment in favor of Eliza Wright against my father. I paid it for my father. Hillegass was my father's attorney in the defence of the suit, and deducted $19.40 for fees." We do not think that this shows that the deceased was, at the time the money was paid to him, and by him to the clerk, acting as the attorney of the appellee. The fact, that Hillegass was the attorney "in the defence of the suit," did not make him such in the payment to the clerk of the money placed in his hands. The general power of an attorney for a defendant ceases upon the entry of a judgment, finally terminating the litigation. Weeks on Attorneys, section 248; *Bartholomew* v. *Langsdale*, 35 Ind. 278. The general rule is, that when the duty ends the liability ceases. This

Hillegass, Adm'r, v. Bender.

ought to be so in such a case as the present, where the employment was to defend a pending action. It is no part of the duty of a defendant's attorney, in the capacity of attorney, to pay judgments entered against his client, although furnished with the money for that purpose. It may be, in such a case, his duty as an agent, to pay the money to the creditor, but ordinarily attorneys are not bound to hunt up and pay judgment creditors. It can not be assumed, from the mere fact that money is supplied for that purpose, that, in making payment, he acts in the capacity of an attorney. There is nothing at all to show that Hillegass was employed to act as an attorney in making payment, or that his professional judgment was solicited upon the mode of payment. If he had been consulted upon that subject as an attorney, if in any way his attention was directed to the fact that he was consulted as an attorney, as to whom and how the payment should be made, a different case would be presented. There is nothing, however, from which it can be inferred that his employment as an attorney extended beyond the defence of the action prosecuted against his client.

The utmost effect that can fairly be given the evidence is, that it shows that the money was received and paid out by the appellant's intestate as the agent of the appellee. The case must, therefore, be considered as one against an agent, and not as one against an attorney. So considered, the evidence does not entitle the appellee to a recovery. The testimony of the witness to whom we have already referred, given upon cross-examination, was as follows : "Sometime after the money was paid to Hillegass, Mrs. Wright sent over word that she wanted the money, and we sent back word that the judgment was paid. They came back again, saying it was not paid, and we told them it was. I went to Fort Wayne to see Hillegass. He told me it was paid over to the clerk ; said he was busy then, but I could go over to the clerk's office and see. I did not go then. The next time I went to town I again told Hillegass that Mrs. Wright claimed that the judg-

ment was not paid yet. He went over with me to the clerk's office, and showed me the clerk's receipt. My father did not object when I told him about it when I went home. It was soon after I paid the money to Hillegass that I saw the clerk." This evidence shows that the agent acted in entire good faith, and that the principal, with full knowledge, acquiesced in the agent's act. Under such circumstances, the principal can not hold the agent responsible. Especially should this be so where, as here, the principal is guilty of negligence after having been directly put upon inquiry. When the appellee was informed, as he was at least twice, that the judgment creditor had not received the money, he ought to have taken some steps to see that it reached her.

Applying the law to the facts, it must be held that the court erred in denying appellant's motion for a new trial.

Judgment reversed.

WORDEN and WOODS, JJ., dissent.