Reinhard, J.
Action by tbe appellee against the appellant on an account for attorney’s fees, office rent and the use of a law library, amounting, in the aggregate, as charged in the bill of particulars, to $1,500.
*243 Answer in twelve paragraphs, consisting of general denial, payment, set-offs and counterclaim. Reply in three paragraphs. Trial by jury, and verdict in favor of appellee for $565. Appellee remitted $41.90, and the court rendered judgment for $523.10.
The first specification of error relied upon is the overruling of the appellant’s demurrer to the third paragraph of the appellee’s reply to the sixth and seventh paragraphs of the answer.
To determine correctly the sufficiency of this paragraph of the reply, it is necessary to look to the two paragraphs of answer to which it is addressed. In the sixth paragraph of the answer, which is a set-off amounting to $336.61, it is averred in substance that on the 4th day of April, 1888, the appellee owed the appellant $100, which is due and unpaid, and that on or about that day the appellee contracted for and purchased forty-five acres of land in Adams county, Ohio, and caused the same to be conveyed to the appellant; that at the same time, and as a part of the same transaction, the appellee and the appellant entered into a written agreement, filed herewith as exhibit “E,” for the repayment of said $100, which appellant then owed appellee, and for the further sum of $150 which appellant, on said day, loaned the appellee, and which is also due and unpaid, making in all the sum of $250; that the said $250 mentioned in the written agreement, and the rent therein mentioned, which was intended as the interest on said money at the rate of eight per cent, per annum, remains due and unpaid; that the real estate was conveyed to appellant as aforesaid, and the said written agreement was executed to secure the payment of said money; thatby the terms of said written agreement the appellee was also to pay the taxes on said real estate, but that he has wholly failed to do so,but has allowed the same to become delinquent, and that appellant was *244 required to pay them, all of which sums remain due and unpaid, and which appellant offers and pleads as a set-off to an equal sum of said alleged indebtedness sued on by appellee.
The seventh paragraph of the answer is also a set-off for $77.61, and has reference to the same transaction, setting forth the same written agreement and making it an exhibit. ' This paragraph treats the land transaction as an absolute sale, and claims there is due from appellee to appellant the rent which has accrued under the agreement, and the taxes which the appellee was to pay, but which, owing to appellee’s failure to do so, were paid by the appellant.
The substance of the written agreement, which is pleaded as the foundation of both the sixth and seventh paragraphs of the answer, is that the appellant has leased to the appellee certain real estate in Adams county, Ohio, which is fully described, for the period of three years, for the following rents, viz.: the taxes on said land and the sum of $20 per annum in cash; also all repairs on the property, the rents to be paid quarterly in advance. The taxes were to be paid by the appellee in addition to said $20 a year, as rent, and before they became delinquent. It was further agreed that appellant should convey and warrant (except taxes) all his right, title and interest in said land to the order of appellee for $250, at any time within three years from the date of the instrument: Provided, that appellee kept the taxes paid up before they became delinquent, paid the cash rent as specified, and kept the property and improvements in as good condition of repair as they were then in; that if appellee failed to pay the taxes, or rent, or the $250, when any part thereof became due, he should forfeit all right to the possession or ownership of the property, and *245 appellant was to have full power to take possession for his own use forever.
The third paragraph of the reply, to which the demurrer was addressed, undertakes to explain, and give in detail the consideration for the $100 which the answer avers to be a portion of the consideration for the Ohio land transaction, showing it to be another real estate transaction concerning a lot in Cambridge City,, Indiana, which the appellant had purchased for appellee, and the legal title to which was in the appellant, and which lot was taken in exchange by the owner of the Ohio land, in part payment for the same. It is then averred that appellant was to hold the Ohio land until April 4, 1891, when, at the election of appellee, he was to convey said land to appellee for $250, and an additional sum equalling the taxes on said property and interest on said $250 at the rate of eight per cent., and that the lease and instrument of writing set out in the sixth and seventh paragraphs of answer was made to show said facts, and to secure the appellant as to said matters, provided the appellee elected to take said land; that in truth and in fact the appellee was never in possession of said Ohio land, but the same was always in the possession of appellant; that appellee never elected to take said land under his option in said agreement, and the time for said election having long since passed, the appellant has become the absolute owner of the same, and no part of the amounts named in said answers are therefore owing from appellee to appellant.
The construction of the contract relied upon by both parties involves many intricate and far-reaching questions concerning the effect of the conveyance to the appellant, the nature of his title, and the interest of the appellee in the same. The appellant holds the legal title to the property. The appellant insists that his deed *246 is only a mortgage to secure certain debts owing to liim by the appellee, and which the appellant seeks to set off against a corresponding amount that might be found due the appellee. The appellee contends that the contract amounts to a conditional sale of the land by the appellant to the appellee; that the conveyance to appellant was not as a security, but that it was made for the consideration of his indebtedness to the appellant, upon the condition that appellee might purchase it from appellant within three years, at a certain price, failing in which all of appellee’s interest therein was forfeited,
We need not stop to determine who is in the right in this contention. The reply is as broad as the answer. If the written contract could not be explained by parol,and the attempt to do so would make the reply bad, the sixth paragraph of the answer was equally as faulty for pleading extraneous matter as was the reply. The latter is at least good as an argumentative denial of the facts averred in both paragraphs of the answer, and, this being so, no available error was committed in overruling the demurrer to it. Loeb v. Weis, 64 Ind. 285; Leary v. Moran, 106 Ind. 560.
The overruling of appellant’s motion for a new trial is assigned as error. Under this head appellant’s counsel discuss together the following causes assigned:—Error in the assessment of recovery, in that it is too large; that the verdict is not sustained by sufficient evidence; that the verdict is contrary to law.
No particular errors of law have been pointed out, and we need, therefore, only determine the two remaining questions. To establish the first proposition above stated, viz.: that the amount of the recovery was too large, appellant’s counsel in their argument recur to the interrogatories answered by the jury, and contend that *247 these override the general verdict to the extent of the excess insisted upon. As before stated, before judgment was rendered the appellee entered a remittitur for $41.90, leaving the amount of the verdict, $523.10, for which judgment was rendered. The effect of the remittitur was, it will be admitted, as if the verdict returned had been for $523.10 instead of $565.
By the first interrogatory and answer thereto the jury fixed the amount of appellant’s indebtedness to the appellee, “not deducting any payments or set-offs,” to be $667. The second interrogatory and answer thereto are as follows: “What amount has the defendant paid the plaintiff on his cause of action, including credits on Katie Jessup’s notes and land controversy? Ans. Nothing.”
It is insisted by appellant’s counsel that there was uncontradicted evidence from which the jury were compelled to find, in answer to the second interrogatory, that payments and credits amounting to at least $110 were due the appellant and for which no allowance was made him. It must be admitted, we think, that under the evidence the appellant was entitled to some credits for payments and the Ohio land transaction. But what the correct amount of such credits is, outside of that due upon the Ohio land matter, we think was not an undisputed fact, and we are not able to agree with counsel that it was as much ás $110. It may therefore be conceded that the prima facie answer to the second interrogatory is wrong. It only remains to be seen whether this apparent error is a real one, and whether it must necessarily lead to a reversal of the judgment.
That the jury did not intend to find, by the answer to 'the second interrogatory, that no credits whatever were due the appellant, is apparent from the fact that they did allow the appellant a credit. The general verdict (in- *248 eluding the remittitur) showed a credit of $143.90, for, if we take this amount and add it to the amount of the judgment ($523.10), we obtain the amount which the jury say was the indebtedness of the appellant to the appellee, viz., $667, not deducting any payments or set-offs. It follows, therefore, that appellant received a credit of $143.90 for payments and set-offs. The answers to the fourth and seventh interrogatories show that $62 of this credit was on the Charles Rauth note, $10 thereof on account of money collected on the Erwin judgment.
These answers convince us that all the credits allowed on set-offs were the $72 on the items above mentioned, which goes to show that, including the remittitur, the appellant has received credits for payments amounting to $71.90, and we can not say that the uncontradicted evidence proves that he was entitled to more.
Nor can we agree with counsel that no explanation was offered to the “receipt in full” given in evidence by appellant, under date of'October 14, 1886.
This receipt, on its face, purports to be only for fees, and does not, therefore, account for any rents or the use of the library. It is true the appellant testified that he had no recollection what the receipt was given for, but the entire business transactions between the parties seem, to have been gone over by the jury, the parties having submitted evidence covering the whole of their dealings, and if the jury believed, from the facts before them, that the receipt was given through a mistake, they had the right to disregard it, as it was only prima facie evidence of its correctness, and the payment of a sum less than the amount actually due, will not operate as a satisfaction of the entire debt, even though a receipt in full be given, unless there is a positive agreement to receive the amount paid in full discharge of the debt. Markel’s Admr. v. Spitler’s Admr., 28 Ind. 488; Ogborn v. Hoff *249 man, 52 Ind. 439; Board, etc., v. State, ex rel., 109 Ind. 596.
It was not an undisputed fact in the case, that there was a controversy between the parties at the time the receipt was given, and a settlement in which the amount named in the receipt was taken in full satisfaction of all the appellant owed the appellee.
In the answer to the third interrogatory, the jury found there was nothing due the appellant on the other land transaction. We think the evidence fairly supports the theory that the transaction was a conditional sale, in which the appellee had the option of taking the land at the price named, and if he declined to do so, he can not be held liable for any portion of the consideration therefor. Moreover, there was no tender of a deed from the appellant to the appellee, and if he still retains the legal title to the land he is in no position to recover for the purchase-money, or its equivalent. Of course, if the appellant leased the land to the appellee, outright, in consideration of the taxes and $20 annual rental, the appellant would be entitled to a credit for such rent and taxes. But the nature of the transaction respecting the land was a matter of serious controversy between these parties. -The appellee testified that he had no money interest in the land, but admitted that he was to have the option of purchasing it within three years, or of selling it to a third party and receiving out of the proceeds all above the $250, interest and taxes, the surplus going to the appellee as compensation for legal services in the litigation concerning the Cambridge City property. He also testified that he found a purchaser for the land within the three years, who had agreed to pay $400 for the same, and that he wrote to the appellant for a deed with the name of the grantee in blank, but that the appellant refused to send the same to him, but did send *250 such a deed to the county seat of the county In Ohio, where the land was situated, with directions that the deed be delivered to appellee whenever he paid the $250, interest and taxes, amounting to about $310.
Appellee further testified that while these negotiations were going on and before he was informed of the situation as to the deed, the party who had agreed to purchase the land refused to take it, and the trade was not consummated. He further stated, in his testimony, that he personally never occupied the land, but admitted he had placed a man in possession thereof, who made some repairs and improvements on the place, in consideration of the use and occupation, but that appellee never received any benefit thereof.
We think that both the written agreement and the appellee’s testimony tend to show a conditional sale of the land upon the terms that appellee might become the purchaser thereof at the price of $250, together with the interest or rental at $20 per annum and the taxes.
Upon this hypothesis whenever the appellee concluded to pay these amounts, the appellant was under obligation to make him a deed, and if appellee sold the land to a third person he was to receive all that was realized over and above the amounts heretofore specified. If this was not done within three years, the appellant was discharged from further obligation of making a conveyance of this land to the appellee. Appellant having the legal title to the land and treating the same as his property, by leasing it to appellee, and seeking in this very action to recover for the rent of the same, can not now be heard to say, as it appears to us, that the transaction constituted a mortgage and that he should have the benefit of the purchase-money or what he denotes as the mortgage debt, by way of a set-off.
We think the most he can be held to be entitled to re *251 ■cover, is the rent of the property, amounting to $77.61, as alleged in the 7th paragraph of the answer, and as proved by the evidence. We think that this amount should have been allowed the appellant as a further credit, but as to any other credits, and as to the appellee’s claim declared upon, the evidence is conflicting, and we can not disturb that portion of the judgment.
As further causes for a new trial, the appellant has assigned the refusal of the court to give certain instructions asked by him, and the giving of others upon the court’s own motion.
The first instruction requested and refused was to the effect that the deed and contract, as to the Ohio land, when taken together, constitute a mortgage, and that the claim of appellant for the mortgage debt, that is to say, the $250 forming the consideration for the purchase of such land, should be allowed as a set-ofE to the appellant. This instruction was correctly refused. We think the evidence strongly tends to show the transaction to have been a conditional sale. The appellant still retains the title and possession of the property as the owner thereof. No proper tender of a deed was ever made to the appellee, and the appellant does not now offer to convey the land to the appellee if judgment for the purchase-money be awarded him. But the instruction assumes that the transaction amounted to a mortgage.
The question was in dispute, and the court could at most have been required to submit it to the jury upon all the evidence in the case. It seems to us that it comes with ill grace from the appellant to claim the land as the absolute owner, attempting to collect rent therefor as landlord, and at the same time insist that he was only a mortgagee,' and should have credit for the mortgage debt. He can not have both.
There was no available error in refusing the second *252 instruction asked. In so far as it states the law correctly, it is fully covered by the 9th instruction given. It could have made no difference upon which claim of the appellee the respective credits due the appellant were applied, as in the end it must, in any event, result in a balance which will form the basis of a simple money judgment.
The rule as to preferred credits could have no application, inasmuch as both the preferred and unpreferred credits must go to the reduction of the appellee’s demands.
In the fifth instruction submitted by the appellant and refused, the court was asked to charge the jury, in effect, that if the appellee entered into an agreement with the appellant to divide with him the attorney’s fees recovered upon any note or mortgage providing for attorney’s fees, such contract was void for champerty, and no part of it could be recovered by appellee from the appellant, although the latter had collected the whole.
It is doubtful, in our opinion, whether the rules as to cliampertous contracts apply to a transaction of this character to the extent of depriving the appellee from collecting any portion of the fees which have been received by the appellant in the collection of the judgments in which they must have been included if they had any existence.
We have not been able, however, to find any evidence in the record, which tends to prove that any of the fees charged for in the complaint were such as had been recovered in a suit or suits, and of which the appellant was to retain a portion and pay the appellee the remainder. Certainly the testimony to which the appellant’s counsel have referred us in their briefs is not of that character.
John Galloway, a witness called by the appellant, tes *253 tilled to a conversation in which appellee told him that Mr. Kepler gave him a good deal of business, and that it was profitable, and that he divided the fees with him.
Whether any such divided fees.constituted any of the items in suit, does not appear, nor does it follow that because the appellee said he divided fees with appellant he gave him any portion of the fees collected from the adverse parties in suits upon notes or mortgages. Appellee had a right to "divide fees” with his client, by transacting his business for a smaller compensation than that which is customary, and this is the only reasonable construction that can be placed upon the appellee’s alleged admission. We are strengthened in this view by the fact that upon cross-examination the witness was asked expressly if the conversation had reference to dividing fees in suits on notes containing stipulations for the payment of attorney’s fees, and the witness declined to give any explanation further than to repeat that appellee said "he divided his fees with Mr. Kepler.”
The other witness who, it is claimed, testified to a division of fees was the appellant himself. He stated that when he first began business with Mr. Jessup he (witness) told appellee that he desired to give all his business to one attorney, and that appellant wanted to have the privilege of looking at appellee’s books whenever he wanted to look up the law, and also to help appellee with the cases, in consideration of which he made the appellee the proposition that "his fees' should be one-half of the fees that are generally allowed,” to which Mr. Jessup agreed. Later on the appellant testified further that in consideration of this reduction in the fees, appellant was to give appellee all of the former’s business in court, and not. employ other attorneys. No inference could properly have been drawn by the jury from any of the testimony mentioned that the arrangement for a di *254 vision of fees had reference to cases in which judgments for attorney’s fees were recovered, or fees collected from the maker of a note or other contract, and in which the appellant and appellee were to share the fees, or that in pursuance of such arrangement any division had taken place, or that it was attempted to enforce any such division in the present action.
Instruction number five, given by the court, is complained of. In it the court charged the jury that the burden was on the defendant to prove his answers by a fair preponderance of the evidence. As the general denial was among the answers, it is insisted that this instruction made it incumbent upon the appellant also' to prove such general denial by a preponderance of the evidence. There is no merit in this contention. In the second instruction the coui't informed the jury that to entitle the plaintiff to recover he must prove some one or more of the several items of his complaint by a fair preponderance of the evidence. The instructions when considered as a whole could not have misled the jury on this point. Conway v. Vizzard, 122 Ind. 266; Deig, Exr., v. Morehead, 110 Ind. 451.
Appellant also insists that instruction number eight was wrong. The substance of this charge was that an attorney acting under the employment of his client is responsible to him only for the want of ordinary care and skill, and reasonable diligence, and that the skill required has reference to the character of the business he has undertaken to do. If he is employed to bring suit, and undertakes to do so but negligently fails to do so, and by reason of such negligence a loss results to the client, he will be responsible for such loss. There is no implied agreement in the relation of attorney and client, or in the employment of the attorney by the client, that the attorney will guarantee the success of his *255 proceedings in a suit or the soundness of his opinions. He only undertakes to avoid errors which no member of his profession of ordinary prudence, diligence, and skill would commit.
We can discover nothing unsound in this instruction. It is certainly not the law that an attorney in all cases warrants the soundness of his opinion.
While it may be true, abstractly, that there never can be but one correct determination of any controverted legal question, it is also true that frequently the most skilled and learned attorneys, and even judges of courts, honestly differ in their views of interpretation of the laws. If lawyers were required to warrant the absolute correctness of their opinions in all cases, very few of them, if any, could stand the test. Such a qualification is certainly not required in any other profession, trade or occupation, and we can not conceive upon what principle a rule of such a character should he applied to practicing attorneys. The law does exact of an attorney that ordinary skill and learning which members of his profession generally possess. It also requires him to exercise the utmost good faith with his client and holds him responsible for any negligent omission in the performance of his duty. Hillegass, Admr., v. Bender, 78 Ind. 225; Reilly v. Cavanaugh, 29 Ind. 435; Moorman v. Wood, 117 Ind. 144; Citizens, etc., Association v. Friedley, 123 Ind. 143.
The instruction in nowise conflicts with any of the well settled rules which appellant’s counsel state in their brief. If the appellant desired a more explicit instruction upon the subject and have it applied to the phase of the evidence most favorable to his side he should have prepared such an instruction and asked the court to give it.
The last assignment of errors relates to the overruling *256 of tlie appellant’s motion to apportion the costs of certain witnesses. These witnesses, so.far as we have been able to ascertain from that portion of the record to which appellant’s counsel have referred us, gave testimony upon an issue or issues upon which the appellant was successful. But they also testified to other matters, such as the reputation of one of the parties, which testimony was not necessarily confined to the issues in which the appellant prevailed. Under these circumstances it is difficult to conceive how the circuit court or this court could intelligently make an apportionment of the costs of these witnesses or why such costs should not abide the result of the trial.
Filed May 18, 1894;
petition for a rehearing overruled Nov. 13, 1894.
We find no available error in the record, except that upon the theory of appellant’s ownership of the Ohio land and the leasing of the same to the appellee, the appellant is entitled to an additional credit of $77.61 for rent and taxes during the three years of the appellee’s occupancy of the same. If the appellee will, therefore, remit the amount of $77.61 within thirty days, the judgment will be affirmed at appellee’s cost, otherwise the judgment is reversed, with directions to sustain the motion for a new trial.
Davis, C. J., and Gavin, J., dissent, believing the case should be reversed.