NINA V. R. DOLAN vs. KEVIN HICKEY & another.

Suffolk.  November 5, 1981. — February 9, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Real Property*, Mortgage.  *Fiduciary.  Fraud.  Attorney at Law*, Conflict of interest.

In an action by a mortgagee to recover a deficiency after foreclosure of a mortgage, no error appeared in the judge's finding that the defendants were not induced to sign the mortgage and note by false representations of the attorney who drafted the documents and who was the undisclosed real party in interest in the transaction. [235-236]

In an action by a mortgagee to recover a deficiency after foreclosure of a mortgage, the record contained no support for the defendants' claim that a confidential relationship existed, at the time of closing of the transaction, between them and the attorney who prepared the mortgage and note. [236]

Preparation of a mortgage and note by an attorney who was the undisclosed real party in interest in a transaction and his presentation of the documents for execution did not, in the circumstances, constitute giving advice to parties with interests adverse to a client. [237]

CIVIL ACTION commenced in the Municipal Court of the City of Boston on May 19, 1978.

The case was heard by *Grabau*, J.

*Gerard A. Powers* for the defendants.

*Richard S. Daniels, Jr.*, for the plaintiff.

HENNESSEY, C.J.  This dispute arose in the course of a proceeding in the Municipal Court of the City of Boston for deficiency after foreclosure of a second mortgage.  The Municipal Court judge entered judgment for the plaintiff mortgagee, in the amount of $10,356.86.  The judge allowed a report to the Appellate Division of the Municipal Court.  We affirm the Appellate Division's decision to dismiss the report.

We summarize the facts as they appear in the report and the findings of the judge. In 1974, the defendants, Kevin and Nancy Hickey, purchased real estate from the plaintiff's assignor. In consideration, they signed two notes secured by mortgages, the first payable to a bank and the second to the nominal seller, a trust. The second note, which is the subject of this suit, was designed to enable the Hickeys to purchase the property without a down payment, and could be repaid either in money or by work equivalent.

The closing was held at the office of attorney Ralph Gordon, who had drafted the notes and mortgages. Mr. Gordon appeared as the representative of the bank, but later testified that he was also the real party in interest in the sale, second mortgage, and second note, and that the seller, as well as the present plaintiff and several others in the chain of title, were straw parties. After the Hickeys executed the notes and mortgages, Mr. Gordon offered to draft a real estate trust for them. The Hickeys accepted, and Mr. Gordon performed the work for a fee.

In the proceeding below in the Municipal Court for deficiency after foreclosure of the second mortgage, the Hickeys sought to avoid liability on grounds of fraud, misrepresentation, and illegality. The judge found for the plaintiff, and refused (as contrary or inapplicable to the facts) the Hickeys' requests for rulings on questions of misrepresentation, fiduciary responsibility, attorneys' professional ethics, and "unclean hands."

The Hickeys argue first that Mr. Gordon (whose actions they attribute to the plaintiff mortgagee) made affirmative misrepresentations concerning the ownership of the property and his position in the transaction. The judge, however, found "specifically that no misrepresentations were made by [Mr. Gordon] to [the Hickeys] to induce them into signing." See *Lishner* v. *Bleich*, 319 Mass. 350, 353 (1946). See also *Smith* v. *Smith*, 222 Mass. 102, 103 (1915). This finding is not, as the defendants suggest, undermined by the fact that Mr. Gordon drafted the note and mortgage in favor of a straw party. It appears that the named owner

was capable of delivering a good title to the real estate, cf. *Lishner* v. *Bleich, supra* at 353, and there is nothing in the findings to suggest that the work equivalency agreement was affected by Mr. Gordon's undisclosed interest. Thus there was no error in the judge's finding that the Hickeys were not induced by false statements to sign the documents.

The Hickeys also argue that Mr. Gordon was acting as a fiduciary, and so was obligated to disclose his interest and advise the Hickeys to seek independent counsel. See *Hill* v. *Hall*, 191 Mass. 253, 262-263 (1906). At least with respect to the real estate transaction, however, the record offers no support for the Hickeys' characterization of Mr. Gordon as a fiduciary. Mr. Gordon testified that he explained to the Hickeys that he was representing other interests, and the judge found that he did not hold himself out as the Hickeys' attorney. The possibility that the Hickeys nevertheless trusted Mr. Gordon, and relied on his expertise in permitting him to draft the documents, does not establish a relationship of confidence. See *Bruno* v. *Bruno*, 384 Mass. 31, 33 (1981); *Comstock* v. *Livingston*, 210 Mass. 581, 584 (1912). Contrast *Broomfield* v. *Kosow*, 349 Mass. 749, 754-758 (1965). None of the facts reported suggests that an attorney-client relationship, or other confidential relationship, arose until after the notes and mortgages were executed, when Mr. Gordon offered to draft a real estate trust for the Hickeys. Cf. *Hill* v. *Hall*, 191 Mass. 253, 264-266 (1906). Mr. Gordon's conduct in drafting the trust provides no basis for avoiding the note executed as part of the earlier purchase and sale transaction.

For similar reasons, the Hickeys' reliance on the Canons of Ethics and Disciplinary Rules, S.J.C. Rule 3:07, 382 Mass. 768 (1981), is misplaced. Because there was no attorney-client relationship between Mr. Gordon and the Hickeys at the time of the closing, the rules concerning representation of multiple clients are inapplicable. See S.J.C. Rule 3:07, DR 5-105, 382 Mass. 781 (1981). Nor did Mr. Gordon "give advice" to unrepresented parties with interests adverse to those of a client, as prohibited by DR 7-104 (A) (2). S.J.C.

Rule 3:07, DR 7-104 (A) (2), 382 Mass. 786 (1981). The acts of drafting documents and presenting them for execution, without more, do not amount to "advice," and are proper as long as the attorney does not engage in misrepresentation or overreaching. See ABA Comm. on Professional Ethics, Opinions, No. 102 (1933); ABA Comm. on Professional Ethics, Informal Opinions, No. 1269 (1973). Once again, any possible impropriety affected only the subsequent real estate trust, and not the notes and mortgages.

Based on these conclusions, we believe that the judge was correct in refusing the Hickeys' requests for rulings. We affirm the Appellate Division's order dismissing the report.

*So ordered.*