Mary HACKER, Plaintiff–Appellant,

v.

Douglas HOLLAND,
Defendant–Appellee.

No. 24A04–9003–CV–126[1].

Court of Appeals of Indiana,
First District.

April 30, 1991.

1. This case was reassigned to this office on January 2, 1991.

exhaust all possible remedies against the third party whose transactions or occurrences with the plaintiff led to the malpractice claim.

We answer in the negative, and therefore reverse and remand for a new trial.

## FACTS

Plaintiff-appellant Mary Hacker contracted to sell a tavern in Aurora to Richard Evans for $75,000. The purchase price included $20,000 for the transfer of the tavern's liquor license. Evans, with Hacker's agreement, retained defendant-appellee Douglas Holland as attorney to handle the closing. Holland had worked for Evans on several previous transactions. Hacker did not retain independent counsel for the transaction.

Holland prepared the closing contract and warranty deed according to Evans's instructions. Evans had paid $5,000 to Hacker prior to closing, and the contract called for a cash payment of $50,000 upon closing with the balance of $20,000 for the liquor license to be paid upon transfer of the license to Evans. The $20,000 balance owing was not secured, and the contract made no provision for interest payable on the balance. After completing an inventory, Evans was also to pay Hacker for the stock and personalty in the tavern: the value of these items totalled $6,000. At the closing, Evans and Hacker each read the contract and Holland read it aloud to both of them prior to signing. Holland's fee for services was $160. Evans paid $80 of the fee and deducted the remaining $80 from the amount he paid to Hacker at the closing.

Evans ultimately paid $10,000 of the $20,000 for the liquor license, $3,000 of the $6,000 for the inventory, and gave Hacker a note for the remaining balance of $13,000. Hacker unsuccessfully attempted to collect the $13,000 balance from Evans, but never brought suit on the note. At the time of trial, neither Hacker nor Holland knew of Evans's whereabouts. There was evidence, however, to the effect that Evans had substantial real property holdings in the Aurora area and that he had a local

Jon R. Pactor, Indianapolis, for plaintiff-appellant.

Michael A. Douglass, Liberty, Douglas C. Holland, Lawrenceburg, for defendant-appellee.

BAKER, Judge.

The primary question before us today is whether, as a condition precedent to filing a legal malpractice suit, a plaintiff must

business associate to whom he had granted a power of attorney.

At trial, Holland presented the expert testimony of a former judge. Over Hacker's objection, the former judge testified that Hacker had not suffered any damages because she had a valid, enforceable contract with Evans. He stated that "what's necessary is to first seek to enforce the obligation against Mr. Evans." *Record* at 364.

## DISCUSSION AND DECISION

At the outset, we note this appeal presents several issues of first impression in Indiana. Accordingly, we have reviewed the case law from our sister jurisdictions, adopting and applying appropriate rules which are in accord with our settled law.

### I

### *Expert Testimony*

■ The error mandating reversal stems from the testimony of Holland's expert witness. Like physicians, attorneys are liable for negligence and want of diligence in their practice, *Citizens Loan Fund and Sav. Ass'n. of Bloomington v. Friedley, et al.* (1890), 123 Ind. 143, 23 N.E. 1075, and the evidentiary rules applicable to medical malpractice actions are generally applicable to legal malpractice actions, as well. *Barth v. Reagan* (1990), 139 Ill.2d 399, 151 Ill.Dec. 534, 564 N.E.2d 1196, 1199. To prove legal malpractice, expert testimony is normally required to demonstrate the standard of care by which the defendant attorney's conduct is measured. *Barth,* 564 N.E.2d at 1200; *Bross v. Denny* (1990), Mo.App., 791 S.W.2d 416, 421, *trans. denied; Hughes v. Malone* (1987), 146 Ga.App. 341, 345, 247 S.E.2d 107, 111.[2]

■ Experts, however, may not testify as to conclusions of law. *Rhine v. Haley* (1964), 238 Ark. 72, 83, 378 S.W.2d 655, 662.

As our supreme court recently stated in a legal malpractice case, "[i]t is inappropriate for a court to entertain evidence concerning a witness's interpretation of the law." *Walker v. Lawson* (1988), Ind., 526 N.E.2d 968, 970. Here, the entire thrust of Holland's expert's testimony was that Indiana law required Hacker to sue Evans as a condition precedent to suing Holland, and it was error for the trial court to admit the expert's "interpretation of the law." *Id.*

The admission of the improper remarks is, of course, subject to the harmless error analysis of Ind.Trial Rule 61. The admission or exclusion of evidence is grounds for reversal only when "the error made by the trial judge relates to a material matter or is of such character as to substantially affect the rights of the parties." *Terre Haute First Nat. Bank v. Stewart* (1983), Ind. App., 455 N.E.2d 362, 368. Here, there can be no question of either the materiality or the substantial effect of the expert's testimony: the remarks concerned Hacker's ability to maintain her case, and they were a misstatement of the law.

■ Courts have reached varying results, *see* R. MALLEN & J. SMITH, *Legal Malpractice* ch. 16 (3rd ed. 1989), but the consensus is that the status of the underlying claim goes to the question of damages, not to the plaintiff's ability to maintain the malpractice action. In other words, a legal malpractice plaintiff normally need not exhaust all possible remedies as a condition precedent to bringing the malpractice suit. The malpractice damages, however, are mitigated by monies received, or which could be received, whether as a result of a judgment, settlement, or other disposition of the underlying claim. *See Theobald v. Byers* (1961), 193 Cal.App.2d 147, 13 Cal. Rptr. 864 (defendant attorneys did not have to pay plaintiff the amount of damages plaintiff would have recovered if plaintiff had filed a claim in bankruptcy against the

---

**2.** There is no need for expert testimony when the question is one within the common knowledge of the community as a whole or when "an attorney's negligence is so grossly apparent that a lay person would have no difficulty in appraising it." *Barth, supra,* 564 N.E.2d at 1200. *See* *also Hughes, supra,* 146 Ga.App. at 345, 247 S.E.2d at 111; Annotation, *Admissibility and Necessity of Expert Evidence as to Standards of Practice and Negligence in Malpractice Action Against Attorney,* 14 A.L.R.4th 170 (1982).

defaulting buyer in a sales transaction); *Deaton v. Mason* (1980), Colo.App., 616 P.2d 994, 995 (in malpractice action stemming from sale transaction, plaintiff seller had two distinct causes of action: an action on the note against the buyer, and a malpractice action against the attorney); *Winter v. Brown* (1976), D.C., 365 A.2d 381 (fact that malpractice plaintiff still had valid cause of action against physician did not excuse defendant attorneys' negligence in allowing a cause of action against the physician's employer to expire); *Bross, supra,* 791 S.W.2d at 419 (defendant attorney's motion to dismiss on grounds of failure to exhaust remedies was properly denied; the question of failure to exhaust "pertains to damages, not whether a cause of action is stated."); *Katzenberger v. Bryan* (1965), 206 Va. 78, 141 S.E.2d 671 (plaintiff not entitled to double recovery; amount of settlement in underlying case to be reduced from malpractice judgment).[3]

In the present case, the rule as discussed simply means Holland bears the usual burden of proving the defense of failure to mitigate damages. The rule does *not* mean Hacker cannot bring suit against Holland until all avenues of redress against Evans have proven fruitless. Assuming an attorney-client relationship existed between Holland and Hacker, Holland must demonstrate Hacker unreasonably failed to mitigate her damages by seeking recovery from Evans. *Persinger v. Lucas* (1987), Ind.App., 512 N.E.2d 865, 870. If he succeeds, any damages to Hacker will be reduced by the damages Hacker could have mitigated with a reasonable effort. Hacker, however, was not required to undertake "unreasonable or impracticable" attempts at mitigation. *Id.*

The trial court, of course, did not rule that Hacker could not maintain her action, but allowed the case to go to the jury. Nonetheless, the improper admission of expert testimony from a former judge stating an incorrect conclusion of law, was prejudicial to the point that Hacker's rights were substantially affected, and the case must be remanded for a new trial in which the expert testimony will conform to the requirements we have set out above.[4] We include the following discussion to resolve questions raised by the parties which are likely to arise upon retrial.

## II
### The Plaintiff's Case

Hacker argues an attorney-client relationship existed between Holland and her,

---

**3.** In *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391, this court held that a malpractice plaintiff's action arising from a property settlement pursuant to a divorce was premature. At the time of the malpractice action, the court in the divorce case had not entered a dissolution decree disposing of the marital property. Accordingly, the plaintiff's claim that the defendant's negligence had resulted in an unfavorable property settlement was premature, and damages were nonexistent. *See* Annotation, *When Statute of Limitations Begins to Run Upon Action Against Attorney for Malpractice,* 32 A.L. R.4th 260, 291 (1984).

Our holding today is not inconsistent with the *Anderson* decision. In *Anderson,* the defendant's negligence could not damage the plaintiff until the divorce court entered its decree disposing of the marital property. Here, assuming Holland and Hacker had an attorney-client relationship, Hacker was damaged, if at all, at the time of the closing, when the sale contract became operative. *See Shideler v. Dwyer* (1981), 275 Ind. 270, 275, 417 N.E.2d 281, 291.

**4.** There is no rule precluding a former judge from giving expert testimony in a legal malpractice case. Because a jury is likely to give great credence to the remarks of such an expert, however, the prejudice stemming from an improperly admitted incorrect statement of law will almost always, as here, be too great to be upheld on appeal.

In her dissent, Judge Chezem interprets Holland's expert's testimony as discussing mitigation of damages, not as an incorrect statement of law. Under this view, her remarks that we are reweighing the evidence would be correct. Because we view the expert's testimony as an incorrect statement of law, however, the jury's verdict may mean the jury found no attorney-client relationship existed. It may also mean, however, the jurors were swayed by the expert's remarks, so that even if they determined an attorney-client relationship did exist, they found for Holland because they were under the erroneous belief an action against Evans was a condition precedent to the action against Holland. Our standard of review prevents us from reweighing the evidence to determine which of these alternatives is correct. *Williams v. City of Indianapolis* (1990), Ind.App., 558 N.E.2d 884, *trans. denied.*

and that Holland breached his duty of care to her by not securing Evans's debt or providing for interest payments on that debt. Holland counters that he was retained by Evans and was acting solely as Evans's attorney throughout the transaction.

■ In a negligence action, a plaintiff must show a duty owed by the defendant to the plaintiff, a breach of that duty, and damages to the plaintiff proximately caused by the breach. *Hatton v. Fraternal Order of Eagles, Aerie # 4097* (1990), Ind.App., 551 N.E.2d 479, *trans. denied.* In the context of an action for attorney malpractice, this requires a plaintiff to show employment of the attorney (the duty), the attorney's failure to exercise ordinary skill and knowledge (the breach), and damages to the plaintiff proximately resulting from that failure. *Schneider v. Wilson* (1988), Ind.App., 521 N.E.2d 1341, 1343.[5]

■ The heart of the present case is the question of Holland's status either solely as Evans's attorney, or jointly as Evans's and Hacker's attorney. Duty being the threshold requirement, a plaintiff must first prove the existence of an attorney-client relationship. *Id.; Grenz v. Prezeau* (1990), Mont., 798 P.2d 112, 116. The relationship need not be express; it may be implied from the conduct of the parties. *Fox v. Pollack* (1986), 181 Cal.App.3d 954, 226 Cal.Rptr. 532, *rev. denied; Zych v. Jones* (1980), 84 Ill.App.3d 647, 40 Ill.Dec. 369, 406 N.E.2d 70; *Page v. Frazier* (1983), 388 Mass. 55, 445 N.E.2d 148. The relationship is consensual, existing only after both attorney and client have consented to its formation. *Torres v. Divis* (1986), 144 Ill.App.3d 958, 98 Ill.Dec. 900, 494 N.E.2d 1227, *appeal denied.* A would-be client's unilateral belief cannot create an attorney-client relationship. *Guillebeau v. Jenkins* (1987), 182 Ga.App. 225, 230, 355 S.E.2d 453, 458. *See generally* 7A C.J.S. *Attorney & Client* § 169 (1980).

■ In the context of real estate transactions, it is most difficult for the disgruntled party on one side of the transaction to demonstrate an attorney-client relationship with the attorney for the other party to the transaction. This is so because attorneys do not owe a duty of care to non-clients except in the context of third party beneficiaries, *see Walker, supra,* and because the interests involved are usually in opposition. A good illustration of this principle is found in *Fox, supra,* wherein the defendant attorney was retained by one party to a real estate exchange and found to owe no duty to the opposing party. At the instruction of the hiring party, the defendant prepared closing documents which left the non-hiring party with an unsecured promissory note. After the defendant read the contract to the parties at the closing and asked if they understood it, the non-hiring party signed the contract and later asserted negligence, arguing the note was orally agreed to have been secured and that the interest rate was lower than previously agreed. Similarly, in *Madrasatul–Watania, Inc. v. Halpern* (1982), 88 A.D.2d 503, 449 N.Y.S.2d 736, the court held the defendant seller's attorney had no duty to explain to the plaintiff buyer the terms of the agreement between the seller and the plaintiff buyer, who should have consulted his own, previously retained, counsel. In *Adams v. Chenowith* (1977), Fla.App., 349 So.2d 230, the Florida Court of Appeals held the defendant seller's attorney was not liable to the plaintiff buyer for an error in the closing statement which increased the buyer's costs. *See also Heliotis v. Schuman* (1986), 181 Cal. App.3d 646, 226 Cal.Rptr. 509, *rev. denied; Assad v. Mendell* (1987), Fla.App., 511 So.2d 682; *Guillebeau, supra; Dolan v. Hickey,* (1982), 385 Mass. 234, 431 N.E.2d 229; Annotation, *What Constitutes Negligence Sufficient to Render Attorney Liable to Person Other Than Immediate Client,* 61 A.L.R.4th 464 (1988).

---

**5.** Hacker's complaint for damages, *Record* at 4–5, asserts the doctrine of *res ipsa loquitor* against Holland. While this issue is not before us for review, we note the rule that *res ipsa loquitor* is generally inapplicable to legal malpractice cases. *Barth, supra,* 564 N.E.2d at 1199.

This is not to say that Holland and Hacker could not have had an attorney-client relationship, but rather that Holland's preparation of the closing documents and his act of presiding over the closing standing alone are insufficient to create a relationship or to render Holland liable to Hacker for any negligent acts associated with the transaction. To prove the existence of a relationship between Holland and herself, Hacker will have to demonstrate an agreement as described above.[6]

RELIANCE

Hacker asserts she has already demonstrated an agreement, but alternatively argues that even if there was no relationship, Holland is nonetheless liable to her under the doctrine of promissory estoppel. Specifically, she argues the trial court erred in refusing her tendered instruction on promissory estoppel. She bases her theory on her testimony that Holland, at a meeting prior to the closing, promised to protect her interests in the transaction. Holland denies such a meeting ever took place and maintains he was acting solely for Evans's benefit and had no contact whatsoever with Hacker prior to closing.

▬ Because we remand for a new trial, we cannot now answer the question of the tendered instruction, but Hacker's entitlement to an instruction will turn on whether she presents evidence in accordance with the following principles. In certain cases, an attorney-client relationship may also be created by a client's detrimental reliance on the attorney's statements or conduct. An attorney has in effect consented to the establishment of an attorney-client relationship if there is "proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it." *Kurtenbach v. TeKippe* (1977), Iowa, 260 N.W.2d 53, 56 (citations omitted).[7]

The cases actually applying this rule to find attorney liability are few, and liability has been found only when the attorney undertook, gratuitously or otherwise, to complete an affirmative act for the party who later brought suit. For example, in *Rice v. Forestier* (1967), Tex.Civ.App., 415 S.W.2d 711, *error refused n.r.e.*, the defendant attorney had a long-standing relationship with the plaintiff client. The client was sued for breach of contract and the defendant had the process forms, but never executed their return, leading to a default judgment against the plaintiff. The court found that while the defendant was free to decline to take the case (i.e., defense of the contract action), his long relationship with the client justified the client's reliance that the defendant would at least return the process forms in the absence of any contrary indication by the defendant. In *Simmerson v. Blanks* (1979), 149 Ga.App. 478, 254 S.E.2d 716, *cert. denied*, the defendant attorney represented the buyer in a real and personal property sale. Immediately after the closing was completed, the defendant attorney told the seller plaintiff he would take care of filing the financing papers. The defendant in fact filed the papers, but did so in the wrong county, thereby endangering the seller's security. On the plaintiff's appeal from the trial court's grant of summary judgment to the defen-

---

6. We note, as did the *Fox* court, that "a simple clause in the agreement stating that it was prepared by the attorney for the opposite party acting solely on behalf of that party's interest, and advising the other parties to seek independent legal counsel to protect their own interests," could prevent actions such as this. *Fox, supra,* 181 Cal.App.3d at 958, n. 2, 226 Cal.Rptr. at 534, n. 2.

7. In this regard, the argument that promissory estoppel serves as a substitute for the attorney-client relationship is not wholly accurate. Rather, as the cases cited in the body indicate, reasonable detrimental reliance in an appropriate context will serve to create an attorney-client relationship. *See Togstad v. Vesely, Otto, Miller & Keefe, et al.,* (1980), Minn., 291 N.W.2d 686, 693, n. 4 (discussing reliance under both a contract and a tort theory of malpractice liability; promissory estoppel may be used to demonstrate reliance factor in creation of attorney-client relationship); *Young v. Hecht* (1979), 3 Kan.App.2d 510, 597 P.2d 682, 686–87, *rev. denied* (promissory estoppel would not work to create an employment contract between defendant attorney and plaintiff would-be client; plaintiff had notice defendant would not perform his promise).

dant attorney, the court held the evidence was sufficient to raise a triable issue as to whether the plaintiff's reliance on the defendant's statement was reasonable enough to render the defendant the plaintiff's voluntary agent.[8]

More typically, courts have discussed reasonable detrimental reliance as a means of creating an attorney-client relationship without often finding such reliance. For example, in *Fox, supra,* the attorney for one party to a real estate exchange was sued for malpractice by the opposite party. The defendant had handled the closing, reading the documents aloud to the parties and allowing the parties to review the documents prior to execution. The plaintiffs claimed an attorney-client relationship existed merely by virtue of the defendant's status as an attorney and his actions at the closing. The California Court of Appeal rejected the plaintiffs' belief that they were the defendant's clients because "[t]heir states of mind, unless reasonably induced by representations or conduct of [the defendant], are not sufficient to create the attorney-client relationship; they cannot establish it unilaterally." *Fox, supra,* 181 Cal.App.3d at 959, 226 Cal.Rptr. at 535.

Similarly, in *Guillebeau, supra,* the court found no attorney-client relationship between the plaintiff real estate seller and the buyer's attorney who handled the closing because the plaintiff's state of mind was not reasonably induced by the defendant attorney's conduct or representations. 182 Ga.App. at 230–31, 355 S.E.2d at 458 (citing *Fox, supra* ).

In *Kurtenbach, supra,* the defendant attorney performed the necessary legal work to set up two corporations for the plaintiff client, who was a securities dealer. The client subsequently sold shares to investors without seeking any advice or consultation from the attorney. When the client was sued by the investors for violations of state securities laws, he in turn sued the attorney for negligently failing to give advice on the securities law requirements. The Iowa

Supreme Court found no attorney-client relationship for the challenged transaction because the existence of the relationship in regard to certain matters does not necessitate the conclusion that the relationship exists for all matters, and because an attorney's liability is limited by the reasonable bounds of the duties undertaken to a client. *Kurtenbach,* 260 N.W.2d at 56–57.

Hacker will not be able to obtain an instruction on her reliance theory upon retrial, unless she can demonstrate either that she had a prior, continuous attorney-client relationship with Holland or that Holland agreed to act in her behalf in the transaction. In either event, she will also have to show she detrimentally placed reasonable reliance on any acts or representations by Holland.

### III

#### *Issues Ripe for Final Disposition*

▆ Hacker raises a final theory of liability which we will dispose of immediately to avoid a waste of resources upon retrial. Hacker argues Holland was under the impression a Mr. David Barrett was Hacker's attorney for the transaction because, according to Holland's affidavit, Hacker told him at the closing that Mr. Barrett was her attorney. From this factual assertion, Hacker argues Holland breached Ind.Professional Conduct Rule 4.2 (Rule 7–104 at the time of the closing), which prohibits attorneys in their representation of clients from communicating with persons represented by counsel without authorization of law or leave of that counsel. By virtue of this alleged professional misconduct, Hacker argues Holland is liable to her under a theory of constructive fraud.

The chasms Hacker attempts to cross here are too wide for her inferential leaps. First, Hacker has not argued to the trial court or this court that Mr. Barrett was her attorney; she merely argues Holland believed Mr. Barrett was her attorney. If indeed Holland believed Mr. Barrett was

---

**8.** The *Simmerson* holding is in accord with the rule that an attorney may be liable for negligence to third parties who are intended third party beneficiaries of an attorney-client relationship. *See Walker, supra.*

Hacker's attorney, the fanciful question of whether Holland violated Prof.Cond.R. 4.2 by closing a real estate transaction with a party whom he erroneously believed to be represented by counsel (which erroneous belief was induced by the party herself during the closing), without the presence or consented-to absence of the non-existent counsel, is one for our supreme court, not this court. IND. CONST. art. VII, § 4.

Second, under Hacker's scenario outlined above, there can be no constructive fraud. As this court stated in another legal malpractice case, "[c]onstructive fraud is the breach of a legal or equitable duty which is fraudulent because of its tendency to deceive others, to violate a public or private trust, or to injure public interests." *Sanders v. Townsend* (1987), Ind.App., 509 N.E.2d 860, 865. The duty, breach of which leads to a claim for constructive fraud, is one which exists solely by virtue of the parties' relationship, and the breach occurs through deceptive silence or representations. *Id.*

As we have already stated in our discussion of the attorney-client relationship, attorneys do not owe a duty to third parties with whom they are not in privity except in cases such as *Walker, supra.* Accordingly, even if Mr. Barrett was Hacker's attorney, or if Holland believed Mr. Barrett was Hacker's attorney, Holland owed no duty to Hacker as a non-client. Moreover, even if there were a duty, Hacker's contention that Holland said he would protect her interests refers only to Hacker's argument that Holland was her attorney under a reliance theory. She has alleged no deceptive silence or representations by Holland as Evans's attorney which would constitute a breach of duty.

We therefore hold, as a matter of law, that Hacker has no cause of action for constructive fraud against Holland in his capacity as Evans's attorney, and pursuant to our authority under Ind.Appellate Rule 15(N) to grant appropriate relief and limit issues for retrial, the constructive fraud question shall be excluded from the retrial.[9]

## IV

### *The Defense*

■ Hacker finally argues the trial court erred in giving jury instructions on the affirmative defenses of contributory negligence and incurred risk. An attorney malpractice action is a negligence action and, as such, the defenses available in other negligence actions are largely available in malpractice actions. Despite Hacker's admonitions to the contrary, these defenses include contributory negligence. *See Theobald*, 193 Cal.App.2d at 150, 13 Cal.Rptr. at 865; *Helmbrecht v. St. Paul Ins. Co.* (1985), 122 Wis.2d 94, 121, 362 N.W.2d 118, 132;[10] *Gustavson v. O'Brien* (1979), 87 Wis.2d 193, 204, 274 N.W.2d 627, 633. *See also Hillegass v. Bender* (1881), 78 Ind. 225 (attorney-client relationship held to have terminated, but attorney served as plaintiff's agent in subject transaction, and was allowed to raise contributory negligence defense). If Holland presents sufficient evidence of contributory negligence on Hacker's part, he is entitled to receive a contributory negligence instruction.

■ Incurred risk stands on slightly different footing. The defense of incurred risk obligates the defendant to show "a mental state of venturousness on the part of the actor against whom it is asserted, and requires a subjective analysis of the actor's actual knowledge and voluntary acceptance of the risk." *Moore v. Sitzmark Corp.* (1990), Ind.App., 555 N.E.2d 1305, 1308 (citations omitted). In a legal malpractice action, the plaintiff will not nor-

---

9. A client may, of course, bring an action for constructive fraud against his own attorney. *See Sanders, supra.* Hacker, however, has argued Holland committed constructive fraud against her in his capacity as Evans's attorney, not as her attorney. This issue, too, then, is foreclosed upon retrial. App.R. 15(N).

10. Hacker, citing *Helmbrecht*, asserts Wisconsin has disallowed contributory negligence as a defense to legal malpractice actions in Wisconsin. This is disinguous at best, considering the court began its discussion of contributory negligence by stating "[f]irst, we recognize that contributory negligence of a client can be a defense in a legal malpractice action." *Id.*, 122 Wis.2d at 121, 362 N.W.2d at 132.

mally have adequate knowledge of the risk to be said to have incurred the risk because few people without some type of legal training or experience have actual knowledge of most legal perils. Accordingly, we think it will be infrequent for legal malpractice defendants to present sufficient evidence to warrant an incurred risk instruction. The defense may be raised, however, and if Holland can present sufficient evidence upon retrial, he will be entitled to the instruction. *See* R. MALLEN & J. SMITH, *Legal Malpractice* ch. 17.3 (3rd ed. 1989).

## CONCLUSION

Because the testimony of Holland's expert witness was an improperly admitted incorrect statement of law which which probably caused Hacker undue prejudice, the judgment of the trial court is reversed, and the cause is remanded for a new trial consistent with this opinion.

SULLIVAN, J., concurs with opinion.

CHEZEM, J., dissents with opinion.

SULLIVAN, Judge, concurring.

I concur except to the extent that an implication may be drawn from Footnote 7 that an attorney-client relationship is actually created by facts which give rise to a claim of promissory estoppel. The effect of pleading promissory estoppel, as required by Trial Rule 8(C), and factual proof of that claim, is in many respects the same as if the relationship was actually created by a contract of employment. This is not to say, however, that the attorney-client relationship actually exists.

To be sure, the person who establishes promissory estoppel is entitled to the benefit of the doctrine which precludes the attorney from denying that a relationship existed. Furthermore, the "client" may recover for any injury or damage sustained as a result of reasonable and justified reliance upon the attorney's conduct, words or silence. However, many duties, responsibilities and consequences attach to a true attorney-client relationship which do not come into play with regard to the status of the parties as defined by a promissory estoppel situation.

Some ramifications of the attorney-client relationship are simply inapplicable in a promissory estoppel setting. For example, it would seem inappropriate for the attorney to attempt to offset the damages occasioned to the "client" by a claim for attorney fees. Additionally, the Rules of Professional Conduct regarding such matters as conflict of interests, confidentiality, and the duty of continuing communication simply do not have relevance to the issue. Subject to this caveat, I concur.

CHEZEM, Judge, dissenting.

I respectfully dissent and would affirm the judgment of the jury. The question of whether an attorney-client relationship existed between Hacker and Holland was a question of fact. It was for the jury to decide questions of fact, and on appeal, we cannot reweigh evidence, judge the credibility of witnesses or substitute our judgment for that of the jury. The majority has simply reweighed the evidence presented at trial. *Picadilly v. Colvin* (1988), Ind., 519 N.E.2d 1217 (on appeal, a general judgment will be sustained upon any theory consistent with the evidence, and we will neither reweigh the evidence nor rejudge the credibility of witnesses).

Even assuming the majority correctly found there was an attorney-client relationship between Holland and Hacker, I would not find error in the admission of the testimony of the defendant's expert witness, Hoffman.

In Hacker's case in chief, Hacker presented an attorney, Thopy, as "an independent expert." That witness gave as his opinion, "[a]ssuming that Mr. Holland was her attorney, ... he failed to protect [Hacker] with the contract". The record then sets forth a series of questions and answers about Hacker's remedies, including whether she could file suit against Evans.[1] On cross-examination the expert was

1. The plaintiff's evidence discloses that Evans

owns several parcels of land in Dearborn Coun-

asked " ... the first thing for a, a party to be able to collect under a legal malpractice suit is that she actually has a loss, is that —, do you feel that's a true statement?" The expert replied, "Yes."

It was not error for the trial court to allow Holland's expert witness to testify. The witness testified, "[i]n this particular case, where this obligation's [sic] still outstanding, she would have to file suit and seek to enforce any Judgment she might obtain and determine as to whether or not that Judgment was enforceable and collectable against Mr. Evans." The witness limited his opinion to the facts of this case. I do not believe the witness' testimony was necessarily an incorrect conclusion of law as applied to the specific facts of this case. Therefore, the witness' testimony was not prejudicial to the point that Hacker's rights were substantially affected. Holland was entitled to have his expert witness testify to insure a fair trial.

The situation at hand is distinguishable from *Walker v. Lawson* (1988), Ind., 526 N.E.2d 968, 970 cited by the majority. In a summary judgment proceeding where the lawyers for each side had filed affidavits concerning legal issues and not factual issues our Supreme Court said, "It is inappropriate for a court to entertain evidence concerning a witness's interpretation of the law. The presence of these affidavits does not create a genuine issue of material fact; thus, it does not preclude the issuance of summary judgment."

Here, we have a matter before the jury who must decide whether an attorney-client relationship existed and, if so, whether Hacker was damaged by Holland's acts. Then, if the jury finds those facts, it must resolve the question of the amount of damages. That question includes the consideration of mitigation of damages by Hacker. There were several remedies available to Hacker. This evidence had to be presented for the jury's consideration. The legal options available to Hacker could only be presented to the jury via an expert witness.

I do not think the expert testimony here should fall within the prohibition against interpreting the law.

ty. The discussion of getting a judgment against him was relevant to the issue of damages.