In the Matter of Martin H. KINNEY.

No. 45S00–9211–DI–926.

Supreme Court of Indiana.

Oct. 8, 1996.

J. Edward Barce, Kentland, for respondent Martin H. Kinney.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The respondent, Martin H. Kinney, has been charged in a three-count *Amended Verified Complaint for Disciplinary Action* with several violations of the *Rules of Professional Conduct for Attorneys at Law.* This Court appointed a hearing officer pursuant to Ind. Admission and Discipline Rule 23, Section 11(b), who, following hearing, tendered his findings of fact and conclusions of law, finding therein misconduct as to Counts I and II and finding for the respondent under Count III. Pursuant to Admis.Disc.R. 23(15), the Disciplinary Commission has petitioned this Court for review of the hearing officer's report, challenging his legal conclusions under Count III and his overall recommendation for sanction.[1]

The review process employed in disciplinary matters entails a *de novo* examination of all matters presented for consideration. *In re Young,* 546 N.E.2d 819 (Ind. 1989). This Court remains the ultimate factfinder and final arbiter of misconduct and sanction. *In re Geisler,* 614 N.E.2d 939 (Ind. 1993); *In re Smith,* 579 N.E.2d 450 (Ind. 1991); *In re Gemmer,* 566 N.E.2d 528 (Ind. 1991). The Commission's objections to the findings of the hearing officer will be resolved within this framework.

The respondent was admitted to the bar of this state in 1955 and is thus subject to this Court's disciplinary jurisdiction. Pursuant to Counts I and II, we now find that on

---

1. In a prior disciplinary action, this Court suspended the respondent for a period of 120 days, at the conclusion of which he was automatically reinstated to the practice of law. *In re Kinney,* 605 N.E.2d 172 (Ind.1993). In that case, this Court found that, in 1988, the respondent neglected a criminal defendant's appeal and that he failed to file a proposed dissolution decree on behalf of a client as directed by a trial court. In the present case, the hearing officer recommends that the sanction for misconduct in the prior action should suffice in the present case, given that the prior misconduct was similar to the present and that it occurred at roughly the same time.

November 28, 1989, and December 5, 1990, respectively, the respondent was retained to represent two individuals seeking post-conviction relief. He charged each client a $3,000 fee and thereafter spent approximately 75 hours in investigation and representation of the first client and between 60 and 65 hours in research, consultation and visitation with the second. The respondent ultimately concluded that there existed no meritorious theory to support postconviction relief in either case, but failed to inform either client of that assessment. Moreover, he failed to inform either client that, based on his assessment, he would not further represent them and that his $3,000 fee in each case had been earned for the efforts he had put forth on their behalves. Later, despite the second client's requests, the respondent failed to return to him papers and property to which the client was entitled.

Under Count I, the Commission charged the respondent with violating Ind.Professional Conduct Rules 1.3, 1.4(a), and 8.4(d).[2] Under Count II, the respondent is alleged to have violated Prof.Cond.R. 1.3, 1.4(a) and 1.16(d).[3] The hearing officer concluded that the respondent did not violate Prof.Cond.R. 1.3 in either count because he performed his contracted services with reasonable diligence and promptness, but that he otherwise engaged in misconduct in Counts I and II as charged. We agree with the hearing officer's conclusions and, accordingly, find that the respondent violated Prof.Cond.R. 1.4(a) and 1.16(d), and 8.4(d).

Under Count III, we now find that in 1985, the respondent agreed to represent a woman in relation to a worker's compensation action and a civil lawsuit against the woman's former employer. Approximately two years earlier, the woman had been shot and severely injured during a robbery at a gasoline station. The shooting occurred while she was on duty as an employee of the station. She suffered life-threatening injuries which necessitated immediate treatment by physicians at a hospital in Gary, Indiana. Certain medical procedures were performed in treatment of her injuries at the Gary hospital. She was later transferred to a hospital in Chicago for further treatment. At some subsequent time, she suffered various medical complications.

The respondent filed the civil lawsuit against the woman's employer, but the trial court dismissed the action for lack of subject matter jurisdiction. He prosecuted the worker's compensation claim to the client's satisfaction and charged the client no attorney fees in either case.

Believing that she was the victim of medical malpractice at the hands of the Gary hospital's doctors, the woman requested that the respondent file a medical malpractice action on her behalf. The respondent was unwilling to do so after learning that another attorney had refused to file such an action for her after initial investigation. That attorney had learned of the professional opinion of one of the woman's Chicago treating physicians, who stated he did not believe that the Gary doctors had failed to render proper medical care. Consistent with the earlier assessments, the respondent informed the woman that, in his opinion, the medical malpractice claim "lacked merit." He also informed her that medical malpractice was an area of law in which he did not practice regularly. At hearing, the respondent testified that he told the woman that he would not represent her in a medical malpractice action. However, he did refer her to an attorney who practiced in that area. On April 12, 1985, that attorney informed the respondent that he was unsure he would take

---

**2.** Professional Conduct Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

Professional Conduct Rule 1.4(a) provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

Professional Conduct Rule 8.4(d) provides: "A lawyer shall not engage in conduct that is prejudicial to the administration of justice."

**3.** Professional Conduct Rule 1.16(d) provides, in relevant part: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned . . .".

the woman's case, but that she should be advised to file a *pro se* complaint to preserve any cause of action.

A *pro se* medical malpractice complaint was filed. Court records indicate that opposing counsel communicated directly with the woman regarding the litigation. Discovery schedules and deadlines were established. The respondent testified that he assisted the woman in answering some interrogatories and attended a deposition with her "because he felt sorry for her." He never asked for nor received any compensation for those acts. The woman eventually failed to comply with certain discovery deadlines, prompting the trial court to issue an ultimatum. The respondent telephoned her and requested that she consult with him regarding the discovery situation. She never did. At a hearing concerning the discovery, the respondent appeared and requested additional time during which to comply with the court's discovery orders. The court granted the relief requested for the purpose of allowing the respondent to file an appearance in the case. He never did, and the complaint was ultimately dismissed due to the client's continued failure to comply with discovery schedules.

The Commission charged that the respondent's actions in Count III violated Prof. Cond.R. 1.3 and 1.4(a). The hearing officer found that the Commission failed to clearly and convincingly demonstrate violation of either provision, noting that the representation the respondent provided in both the worker's compensation claim and the civil action was completely satisfactory. He further concluded that there was no "contract for representation, either expressed or implied" with regard to the medical malpractice claim and therefore found no attorney misconduct flowing therefrom.

■ The Commission contends that the hearing officer's failure to find misconduct in Count III is erroneous, arguing that the respondent "indisputably assisted the client in the prosecution of the medical malpractice claim" and asserting that such representation was violative of Prof.Cond.R. 1.3 and 1.4(a). The Commission contends that the absence of a formal written agreement for legal ser-

vices or other similar indicia of an attorney-client relationship is not dispositive of the issue of existence of such a relationship in this instance. Rather, it argues that the actual course of conduct between the woman and the respondent demonstrates that he represented her with regard to the medical malpractice claim. To bolster its position, the Commission points out that the "core element" of the practice of law is the giving of legal advice and that the respondent provided legal advice and counseling to the woman during the pendency of the medical malpractice action.

We agree with the hearing officer's conclusion that there can be no finding of violation of the *Rules of Professional Conduct* in Count III without first establishing that the respondent actually represented the woman in the malpractice action, given that there appears to have been no defect in the representation he provided in the worker's compensation and civil cases.

■ The record before us demonstrates that there was no formal or express creation of an attorney-client relationship between the respondent and the woman in regard to the medical malpractice case. However, an attorney-client relationship need not be express, but may be implied by the conduct of the parties. *In re Anonymous,* 655 N.E.2d 67, 70 (Ind.1995), *Hacker v. Holland,* 570 N.E.2d 951, 955 (Ind.App.1991) (legal malpractice action). The relationship is consensual, existing only after both attorney and client have consented to its formation. *Id.*

In relation to the medical malpractice action, the respondent helped the woman answer some interrogatories, attended a deposition with her, and, at a court hearing which the woman apparently failed to attend, managed to secure a continuance of certain discovery deadlines. Despite the respondent's provision of this nominal assistance, we find no evidence that he believed he was, in a general sense, representing the woman in the matter, much less that he consented to the formation of an attorney-client relationship. The evidence adduced at hearing reveals that the respondent explicitly curtailed his affiliation with the woman and referred her to an

attorney who was knowledgeable about medical malpractice actions. The hearing officer found that the respondent "told [the woman] that he would not represent her in the [medical malpractice case] or file it because of his belief that it lacked merit . . .". At the court hearing regarding discovery, the respondent was expressly afforded the opportunity to file a formal appearance on the client's behalf, but declined to do so. Each of these facts indicates that the respondent did not consent to the formation of an attorney-client relationship and that his actions should have put the woman on notice that he did not represent her.[4]

■ Also absent is any indication that, during the pendency of the medical malpractice action, the woman affirmatively consented to the respondent's representation of her. The malpractice complaint was officially filed *pro se.* Opposing counsel's contact was to be the woman, not the respondent. The woman testified that the respondent told her that he did not routinely handle medical malpractice cases. When the respondent telephoned her to inform her of possible impending discovery sanctions, she failed to return his call, thus indicating that she did not recognize the respondent as her attorney and saw no need or held no desire to confer with him. In short, there is nothing in the record clearly establishing that the woman believed or had reason to believe that the respondent was her attorney in the medical malpractice action. It appears that the assistance the respondent provided to her in relation to the malpractice action was fostered by his sympathy for her plight, and not by any desire to provide professional services to her. Our conclusion is not meant to contradict the Commission's assertion that the giving of legal advice is an essential element of an attorney-client relationship. However, the mere provision of nominal legal advice is not automatically dispositive where the existence of an attorney-client relationship is disputed.

Having found that no attorney-client relationship existed in regard to the medical malpractice action, we find that the respondent did not violate the *Rules of Professional Conduct* in Count III.

■ Our findings of misconduct in Counts I and II necessitate assessment of an appropriate disciplinary sanction. In so doing, we consider several factors: the duty violated, the state of mind of the respondent, the actual or potential injury caused by the lawyer's misconduct, and factors in mitigation and aggravation. *In re La Cava,* 615 N.E.2d 93 (Ind.1993). As noted above, the hearing officer recommended that the respondent's sanction in a prior disciplinary case should suffice for the present misconduct as well, given that each transgression occurred during roughly the same time period. He recommended an admonishment for the present misconduct.

Several factors are purported to mitigate the severity of the respondent's misconduct. Most generally, the hearing officer found that the respondent is an attorney with an excellent reputation. Of course, that finding is tempered somewhat by the fact of the respondent's prior discipline by this Court. The hearing officer noted that, up until the time the respondent determined that the post-conviction theories of the defendants lacked legal merit, the respondent performed diligently and professionally for his clients. We find some mitigating utility in these facts, but note that there is no extenuating condition put forth for the respondent's failure properly to bring his representations of the incarcerated criminal defendants to closure by promptly informing them that their contemplated actions were without merit and returning to them requested papers. Incarcerated criminal defendants are especially at the mercy of their lawyers for information pertaining to their cases because of their limited access to and sometimes infrequent consultations with their lawyers. The respondent's failure to communicate to them his assessment of their cases unfairly deprived them of the ability to make informed,

---

**4.** In this regard, see *Hacker, supra,* which provides that "[a]n attorney has in effect consented to the establishment of an attorney-client relationship if there is 'proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it.'" *Hacker,* 570 N.E.2d at 956. (Other citations omitted). *Accord, Lycan v. Walters,* 904 F.Supp. 884, 907 (S.D.Ind.1995).

intelligent decisions regarding their situations. In past cases, when confronted with a lawyer's failure to adequately communicate with a client and where the lack of communication was an isolated occurrence rather than a pattern of misconduct, this Court has imposed a public reprimand. *See, e.g., In re Stivers,* 648 N.E.2d 1147 (Ind.1995); *In re Brown,* 646 N.E.2d 664 (Ind.1995).

In light of the above considerations, we are convinced that a public reprimand is commensurate with the misconduct that occurred in this case. Accordingly, the respondent, Martin H. Kinney, is hereby reprimanded and admonished for the misconduct set out above.

Costs of this proceeding are assessed against the respondent.