VOLKSWAGEN AKTIENGESELLS-CHAFT and Volkswagen of America, Inc., Plaintiff,

v.

NOVELTY, INC., Defendant.

No. IP 1:02–CV–1487–SEB.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 18, 2003.

Cynthia M. Kirk, Jonathan G. Polak, Dann Pecar Newman & Kleiman, P.C., Indianapolis, IN, for Plaintiff.

Daniel J. Lueders, Denise M. Gosness, Woodard Emhardt Naughton Moriarty & McNett, LLP, Indianapolis, IN, for Defendant.

## ENTRY ON PLAINTIFF'S MOTION TO DISQUALIFY DEFENSE COUNSEL

BARKER, District Judge.

Plaintiffs Volkswagen Aktiengesellschaft and Volkswagen of America, Inc. (hereafter "VW")[1] have sued Novelty, Inc. for, most pertinently, trademark infringement, false designation of origin, trademark dilution, and unfair competition, all in violation of the Lanham Act, 15 U.S.C. § 1114(a) and 1125(a) and (c). The case is before us on a collateral matter: the plaintiffs' motion to disqualify the firm of Woodard, Emhardt, Naughton, Moriarty & McNett (hereafter "Woodard" or the "defense firm") from its representation of Novelty, Inc. on the ground that Woodard formerly represented VW in a substantially related matter and thus has a conflict of interest. For the following reasons, we GRANT the

---

1. Continental Enterprises, Inc. joins VW's motion to disqualify the Woodard firm because it, too, was a client of Woodard's and is likely to be involved as a material fact witness in VW's action against Novelty. For reasons spelled out in greater detail below, we limit our discussion to VW. Suffice to say for now, we conclude that Continental was VW's agent with respect to Woodard's representation of VW so that it is irrelevant to VW's motion whether Continental was also a client of Woodard's or merely VW's agent.

plaintiffs' motion and disqualify the Woodard firm from representing Novelty, Inc. in this action.

## II. *Background.*

Continental Enterprises is a private investigation firm which helps trademark holders to enforce their trademarks. According to Karl Manders, Continental's president, the company identifies possible infringers of their clients' trademarks and then investigates and prosecutes the infringers. Continental occasionally hires outside counsel to assist in its investigations or prosecutions of infringers, "usually on behalf of its trademark holding clients." Manders Aff., ¶ 1. VW has been among Continental's trademark-holding clients since the late 1990s. Continental has handled "hundreds" of intellectual property matters for VW. Manders Aff., ¶ 2; Scipione Aff. ¶ 3.

In late 1999, Mr. Manders went to Woodard for assistance on an investigation on behalf of VW. Continental and VW believed that Galyan's Trading Company was infringing on VW's trademark and that Galyan's was raising "several unique legal defenses" in its opposition to VW's claims of infringement. Mr. Manders worked with Woodard attorney Tom Henry and others. Manders Aff., ¶¶ 3–4. Billing records prepared by Woodard indicate that Continental was the invoicee. They also indicate that Woodard performed legal work on behalf of VW. Pl.Ex. B–2. Thus, for example, an entry for billing services through January 31, 2000 reads:

> Conducting legal research regarding copyright and trademark liability for VW Bug appropriation on T-shirts; legal research regarding parody issue for same .... receiving and reviewing a communication from the client and the enclosure regarding the VW infringement. Invoice No. 37921, February 17, 2000.

And:

> Internal discussion regarding the likely monetary recovery from Galyan's sales of Beetle T–Shirts. Invoice No. 39711, May 23, 2000.

And:

> Conducting a telephone conference with Linda Scipione; corresponding with the client regarding the copyright application. Invoice No. 41272, August 18, 2000.

These billing entries refer expressly to "VW," the "Beetle" and the "Bug," or to "Linda Scipione," a paralegal who worked for VW on intellectual property matters generally and on trademark infringement in particular. Scipione Aff., ¶¶ 1, 2.[2] Numerous other entries contained in Pl.Ex. B–2 refer to Galyan's and, significantly, litigation strategies against Galyan's. One example among many: "Receiving and reviewing a communication from the client and enclosures regarding the Galyan's dispute; conducting a telephone conference with the client regarding same; internal discussion regarding strategy for the case; correspondence with the client." Invoice No. 38992, April 10, 2000.

Ms. Scipione has testified that, from late 1999 through early 2001, Woodard represented VW with respect to the Galyan's matter. She states that Woodard's representation of VW was both indirect—through Continental—and direct—that is, with herself. Woodard provided legal assistance to VW with respect to analysis and prosecution of the infringement case against Galyan's, and with preparation of copyright and trademark applications for VW's marks and art work. It appears that Ms. Scipione personally conversed with

---

**2.** Novelty seeks to raise suspicions as to Ms. Scipione's authority to speak of the matters contained in her affidavit. But Ms. Scipione expressly states that she speaks from "personal knowledge." Scipione Aff., ¶ 1; *also see* ¶¶ 6, 7.

Woodard lawyers about the Galyan's matters. Scipione Aff., ¶¶ 5, 6. Ms. Scipione also has testified that, in the course of its representation on the Galyan's matter, Woodard learned confidential information concerning VW's business practices and litigation strategies with respect to VW's trademarks. Scipione Aff., ¶ 7.

Both Mr. Manders and Ms. Scipione anticipate being called as fact witnesses in Novelty's action against VW and that Novelty will have information advantageous to itself and disadvantageous to VW that was developed by Woodard in the course of its prior representation of VW. Manders Aff., ¶ 7; Scipione Aff., ¶ 8.

### III. *Discussion.*

#### A. *Conflict of Interest With Respect to Former Clients.*

The parties correctly acknowledge that our point of departure is Indiana Rule of Professional Conduct, 1.9,[3] which governs conflicts of interest that may arise because of a lawyer's (or law firm's) duties to a former client. It provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to

a client or when the information has become generally known.

The lead case concerning attorney disqualification is *Analytica Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir.1983), whose governing analysis we quote at length:

For rather obvious reasons a lawyer is prohibited from using confidential information that he has obtained from a client against that client on behalf of another one. But this prohibition has not seemed enough by itself to make clients feel secure about reposing confidences in lawyers, so a further prohibition has evolved: a lawyer may not represent an adversary of his former client if the subject matter of the two representations is "substantially related," which means: if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second. It is irrelevant whether he actually obtained such information and used it against his former client, or whether—if the lawyer is a firm rather than an individual practitioner—different people in the firm handled the two matters and scrupulously avoided discussing them.

*Id.* at 1266.[4] VW argues that: it was Woodard's client in its action against Galyan's; Woodard's representation of Novelty is substantially related to its earlier representation of VW in the Galyan's matter; and Woodard gained confidential information about VW in the earlier representation that, unless prevented, it may use

---

**3.** The Southern District of Indiana has expressly adopted the Indiana Rules of Professional conduct. Rule of Disciplinary Enforcement, Rule IV(B) ("The Rules of Professional Conduct adopted by this Court are the Rules of Professional Conduct adopted by the Supreme Court of the State of Indiana as amended from time to time by that state court, except as otherwise provided.")

**4.** VW refers to an irrebuttable presumption of disqualification where the prohibition is breached; Novelty disputes whether the presumption is irrebuttable. This is the subject of Judge Coffey's dissenting opinion in *Analytica.* The issue need not detain us here because, even assuming that the presumption is rebuttable, we conclude that Novelty has not successfully rebutted it.

against VW in this representation against VW.

Novelty offers four arguments in opposition to plaintiffs' motion to disqualify: first, that VW was not Woodard's client in the earlier representation; second, even assuming that VW had been Woodard's client, VW waived its privilege by sharing the information at issue with Continental, a non-lawyer third party; third, the current representation is not "substantially related" to the earlier one; finally, Novelty's interest in being represented by Woodard is sufficiently strong as to outweigh VW's interest in preventing the representation. We find all four arguments meritless.

### 1. *VW was Woodard's Client.*

■ Woodard's billing records show that Woodard knew or should have known that VW was one of its clients; or, which amounts to the same thing, that VW believed it had a client-attorney relationship with Woodard, a belief that Woodard endorsed by its conduct.

It is true that Woodard's billing records refer to Continental as its client and it sent its invoices to Continental for payment. As noted earlier, however, Woodard's billing records refer expressly to VW, the Beetle, and the Bug. They also refer to Linda Scipione, a VW paralegal who handles trademark issues for her employer and who had direct contact with Woodard regarding the Galyan's representation. They also refer to the Galyan's matter and to "the strategy for the case" against Galyan's. Pl.Ex. B–2, Invoice 38992, April 20, 2000. Tellingly (though by no means conclusively), one of Woodard's invoices notes that it conducted "legal research regarding copyright and trademark liability *for* VW Bug appropriation on T-shirts" and "legal research regarding parody issue *for* same...." [Emphasis added.] Pl.Ex. B–2, Invoice No. 37921, February 17, 2000. The

construction indicates that Woodard knew its efforts were undertaken on behalf of VW.

This conclusion is reinforced by Woodard's acknowledgment that Continental is a one-man operation that conducts business from a Carmel residence. It seeks potential intellectual property infringement situations for various companies. And "it had no intellectual property rights to enforce." Def. pp. Brief, p. 7. Well, then, we ask, whose intellectual property rights did Woodard think it was investigating, researching, and helping to enforce?

■ All of these facts point to Woodard's representation of VW. It is true that an attorney-client relationship is established only by mutual assent and that "a would-be client's unilateral belief cannot create an attorney-client relationship." *Hacker v. Holland,* 570 N.E.2d 951, 955 (Ind.Ct.App.1991); *Douglas v. Monroe,* 743 N.E.2d 1181, 1184 (Ind.Ct.App.2001). Nevertheless, "[A]n attorney-client relationship need not be express, but may be implied by the conduct of the parties." *Matter of Kinney,* 670 N.E.2d 1294, 1297–98 (Ind.1996); *Hacker,* 570 N.E.2d at 955. The relationship has been implied where "a person seeks advice or assistance from an attorney, where the advice sought pertains to matters within the attorney's professional competence, and where the attorney gives the desired advice or assistance." *Douglas,* 743 N.E.2d at 1183. Additionally, an important factor in determining whether an attorney-client relationship exists is "the putative client's subjective belief that he is consulting a lawyer in his professional capacity and on his intent to seek professional advice." *Id.* It is unrebutted on the record that VW and its agent Continental thought that Woodard represented VW with respect to the Galyan's matter. We also conclude that Woodard assented to the relationship by virtue of its conduct,

which included knowingly undertaking research, investigation, and legal strategizing on behalf of VW with respect to the Galyan's matter.

In sum, VW and Woodard had established a client-attorney relationship so that VW is Woodard's former client with respect to Novelty's action against VW.

### 2. *VW did not Waive its Privilege By Sharing Information with Continental.*

 Novelty not only acknowledges that Continental was Woodard's its client; it insists that Continental (and only Continental) was Woodard's client with respect to the Galyan's matter. More important for present purposes, we conclude that Continental was VW's agent in the earlier representation so that VW's confidential information that Continental may have shared with Woodard remained privileged and confidential. It has been well-settled law in Indiana for more than a century and a half that "[t]he scope of the attorney-client privilege extends to communications between an attorney and its client *made through their agents or representatives.*" *Richey v. Chappell,* 594 N.E.2d 443, 446 (Ind.1992) (emphasis added); *Brown v. State,* 448 N.E.2d 10, 13–14 (Ind.1983).[5] Information conveyed to counsel by a client's agent remains privileged because the sharing of information between lawyers and clients is a two-way street. "The attorney-client privilege exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable counsel to give sound and informed advice." *In re Witham Memorial Hospital,* 706 N.E.2d 1087, 1091 (Ind.Ct.App. 1999).

We conclude that Continental served as VW's agent for, among other things, communicating with Woodard on behalf of VW during Woodard's earlier representation.

### 3. *The Novelty Representation is Substantially Related to the VW Representation.*

 Novelty argues that, even if Woodard represented VW in an earlier matter, its current representation of Novelty is not substantially related to its earlier representation of VW. It argues, additionally, that there is no reason to believe that, even if the matters were similar, Woodard gained the kind of knowledge that it could use against VW.

Thus Novelty argues that the Galyan's matter did not involve litigation and it involved art work on T–Shirts and not toy cars. Besides, says Novelty, the representation (if it existed) was only for about twenty hours and amounted to a little more than $4,000.

The question of whether a particular representation is "substantially related" to an earlier one is governed by the Seventh Circuit's language in *Analytica,* quoted earlier: "substantially related" means "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." The court pointedly noted that "[i]t is irrelevant whether he *actually* obtained such information and used it against his former client, or whether—if the lawyer is a firm rather than an individual practitioner—different people in the firm handled the two

---

**5.** The principle is, by American standards, ancient. In *Maas v. Bloch,* 7 Ind. 202, 1855 WL 3650 (1855), the Indiana Supreme Court deemed a communication privileged when the individual who made the statement—a non-English speaker—made the statement to his counsel through an interpreter. The opposing party could not require the interpreter to reveal precisely what the client said after the client apparently recanted his earlier statement.

matters and scrupulously avoided discussing them." Also see, *Safe–T–Products, Inc. v. Learning Resources, Inc.,* 2002 WL 31386473 (N.D.Ill.2002), *3.

VW's case against Galyan's, like its action against Novelty, was for trademark infringement and dilution, specifically involving VW's interest in its logo and nomenclature pertaining to the "Beetle" and the "Bug." Pl.Ex. B–1, Complaint. This is enough to create a presumption that the law firm conducting the research and investigation, and participating in the strategizing of issues relating to VW's action against Galyan's, "could have obtained confidential information in the first representation that would have been relevant in the second." Indeed, Mr. Manders' and Ms. Scipione's testimony tends to support not only that Woodard *could* have obtained such confidential information, but *did.* Manders Aff. ¶¶ 5, 7; Scipione Aff., ¶¶ 6, 7.[6]

We conclude, in sum, that VW's action against Galyan's, in which Woodard represented VW, and VW's action against Novelty, in which Woodard seeks to represent Novelty, are sufficiently related to raise a presumption that Woodard obtained confidential information from VW that it could now use against its former client. Woodard has done nothing to rebut that presumption.

### 4. *Novelty's Interest does not Outweigh the Policy Against Conflicts.*

■ In view of our conclusions that Woodard represented VW in a substantially related matter and could have obtained confidential information that it now could use against VW, we are constrained to find that the policy against a law firm adopting a position adverse to its former client takes precedence over Novelty's interest in retaining the counsel of its choice. Novelty correctly argues that its interest in selecting counsel is properly considered in the balance. But where, as here, the earlier representation was so similar to the current one, we take to heart the Seventh Circuit's observation that: "For a law firm to represent one client today, and the client's adversary tomorrow in a closely related matter, creates an unsavory appearance of conflict of interest that is difficult to dispel in the eyes of the lay public—or for that matter the bench and bar...." *Analytica,* 708 F.2d at 1269.

### IV. *Conclusion and Order on Fees and Costs.*

For the reasons addressed, we conclude that Woodard must be disqualified from its representation of Novelty in VW's lawsuit against Novelty. Accordingly, we GRANT VW's motion to disqualify the Woodard firm.

VW has asked us to tax fees and costs associated with its disqualification motion against Novelty. In order to avoid multiplying the briefs and, therefore, the hours, with respect to this matter, we encourage the parties to agree to reasonable fees and costs. In the event they cannot agree, VW shall, within thirty days after the date of this entry, submit its petition for fees and costs along with supporting evidence and argument. Novelty shall file its rebuttal

---

**6.** Woodard argues that VW has not really shown that Woodard obtained confidential information that it could now use against VW. The Seventh Circuit has noted, however, that: "The "substantial relationship" test has its problems, but conducting a factual inquiry in every case into whether confidences had actu- ally been revealed would not be a satisfactory alternative, particularly in a case such as this where the issue is not just whether they have been revealed but also whether they will be revealed during a pending litigation." *Analytica,* 708 F.2d at 1269.

within fifteen days after receiving VW's petition.