[No. A028947. First Dist., Div. Four. May 28, 1986.]

GEORGE HELIOTIS, Plaintiff and Appellant, v.
HARRY SCHUMAN et al., Defendants and Respondents.

[No. A027232. First Dist., Div. Four. May 28, 1986.]

GEORGE HELIOTIS, Plaintiff and Appellant, v.
LEONARD BERGER, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Modena & Royce, Vincent J. Scotto III, Tinning & DeLap, Anthony W. Hawthorne and Lawrence A. Gibbs for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, John B. Marchant, Michael G. Ornstil, Long & Levit, Ronald E. Mallen and J. Lynn Glazier for Defendants and Respondents.

**OPINION**

**CHANNELL, J.**—Appellant George Heliotis purchased a home from respondents Harry and Bessie Schuman; the Schumans' attorney, Leonard Berger, assisted. When Heliotis discovered soil damage on the site after the close of escrow, he filed a complaint for rescission, fraud, and intentional infliction of emotional distress against the Schumans and Berger. The trial court dismissed Berger from the action on his motion for summary judgment; the jury rendered a verdict on the merits for the Schumans. Heliotis appeals both judgments, contending that (1) he is entitled to a new trial against the Schumans on the basis of constructive fraud (Civ. Code, § 1573);[1] (2) the trial court erred by using a BAJI special verdict form; and (3) Attorney Berger owed him the same duty to disclose material facts that a real estate broker would owe him. We reject these contentions and affirm the judgments.

---

[1] All statutory references are to the Civil Code, unless otherwise indicated.

## I. FACTS

Appellant George Heliotis regularly purchased residential property to repair and resell it. He had already purchased several properties for this purpose by late 1980. It was his practice to do his own inspections; he usually purchased these properties through a realtor.

In November 1980, Heliotis saw a house at 20 Skyline Drive in Daly City. The house appeared to be vacant and untended. Thinking that he might buy it, he contacted the owners, Harry and Bessie Schuman, in December. The Schumans referred the matter to their attorney, respondent Leonard Berger. Berger handled the sale; Heliotis did not have any direct contact with the Schumans during the course of the purchase.

Heliotis obtained a key to the house and inspected the property. The house was in obvious disrepair and he estimated that it would cost $20,000 to improve it. Although he inspected the property outside the house, he did not notice empty foundations of houses that once sat nearby, nor did he see the empty driveways leading to these abandoned homesites. The property was later valued at $128,000 by an appraiser who did not consider the neighborhood soil stability problems, but Heliotis purchased it for only $75,000, without the assistance of a real estate agent. In the real estate contract that he drafted, Heliotis stated that he had made a complete on-site inspection of the property.[2] In a release that Berger drafted, he repeated this statement and indicated that neither Berger nor the Schumans made any representations to him about the condition of the property.[3] Berger and the Schumans knew that the site suffered from soil instability, but did not see fit to tell Heliotis, assuming that he knew all about it from his inspection.

Escrow closed on the sale in January 1981, and Heliotis moved into the house. In September or October 1981, a realtor who was Heliotis' friend

---

[2]One portion of the real estate purchase contract read, "I, George Heliotis, . . . have inspect[ed] the property located at 20 Skyline Drive. . . . Purchaser [Heliotis] has made an on-site complete inspection of the above property, and has satisfied himself about the condition of the property. [He] agrees to purchase it in its present physical condition without any further inspection." Heliotis prepared this document himself.

[3]In a memorandum titled "Re: Property located at 20 Skyline Drive, Daly City, California," Heliotis states that he "has made his own investigation of the property, . . . has made a complete on-site inspection and has satisfied himself about the condition of the property. . . . [H]e has not relied upon any statement or representation relating to the property made by the sellers, or made by any agent of the sellers. No statements have been made to him relative to the condition of the property by any person representing the seller in any capacity. . . . [H]e is purchasing the property fully aware of its damaged condition as of the close of escrow. . . . [¶] [He] hereby releases the sellers, their heirs and assigns, from any and all claims or demands relative to the condition of the subject property." Heliotis signed this document, which Berger prepared for him.

told him that the land underneath his house was unstable and that homes next door to his had already been removed. He was shocked and allegedly would not have purchased the property if he had known of the underlying soil condition.

Heliotis' loan payments were coming due, so he decided to sell the house. In October or November 1981, he listed the house for sale, instructing his realtor to disclose the soil stability problem to potential buyers. In the next few months, he received several offers on the house, each one withdrawn as soon as the disclosures were made. In the winter of 1982, his yard began to fall away; workers for the City of Daly City informally advised him to begin looking for a place to move his house. The following winter, the backyard of the property dropped 10 feet in one night.

In March 1983, Heliotis brought an action against the Schumans and Attorney Berger. Berger moved for summary judgment, alleging that, as attorney for the Schumans, he owed no duty to Heliotis. The trial court agreed and ordered summary judgment for Berger. Heliotis filed a timely notice of appeal from the judgment.

Meanwhile, Heliotis' case against the Schumans went to trial. On a special verdict, the jury found that the Schumans concealed a material fact from Heliotis that they had a duty to disclose, but that the Schumans did not intentionally conceal this fact in an attempt to defraud Heliotis. The trial court entered judgment in favor of the Schumans. Heliotis unsuccessfully moved for a new trial. He filed a timely appeal from the judgment.

II.-III.*

. . . . . . . . . . . . . . . . . . . . . . . . .

.

### IV. ATTORNEY'S DUTY TO DISCLOSE

In his second appeal, Heliotis contends that Attorney Berger owed him the same duty to disclose material facts that a real estate broker would owe him in the same situation.

---

*See footnote, *ante,* page 646.

This appears to raise a question of first impression in California.[7] Clearly, a real estate broker owes a prospective purchaser a duty to disclose known facts that affect the value or desirability of the property if these facts are not readily observable by the purchaser. (Cal. Admin. Code, tit. 10, § 2785, subd. (a)(3);[8] see *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90, 99 [199 Cal.Rptr. 383, 46 A.L.R.4th 521].) Even assuming that the bare foundations and driveways leading to them were not "readily observable" by a reasonable purchaser inspecting nearby property before purchase, Heliotis would have us extend this broker's duty of disclosure to an attorney who was not acting as a real estate broker. No one paid a broker's commission to Berger; he merely acted as the seller's attorney in the transaction, representing their interests and handling the details of the sale.

In recent years, the California Supreme Court has extended the attorney liability to persons other than clients, eliminating the common law requirement of privity of contract in such tort situations. (See, e.g., *Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 588-591 [15 Cal.Rptr. 821, 364 P.2d 685]; see also *Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 226-230 [74 Cal.Rptr. 225, 449 P.2d 161].) ■ However, significant policy reasons persuade us against extending a broker's liability to an attorney under the facts disclosed by the record. Berger did not attempt to persuade Heliotis to purchase the property, and made no effort to interfere with whatever investigation Heliotis chose to make. Heliotis, as was his custom, made his own investigation, acknowledging in writing that he had done so and that Berger had made no representations respecting the property. The imposition of a duty to disclose on an attorney who merely acts as a conduit for sellers in a real estate transaction as in this case would compromise the underpinnings of the attorney-client

---

[7]Other states that recognize California's extension of attorney liability to cases in which there was no privity between the attorney and the party claiming injury have declined to extend attorney liability in this and similar contexts. (See, e.g., *Page* v. *Frazier* (1983) 388 Mass. 55, 63 [445 N.E.2d 148, 153] [mortgagee's attorney held not liable to mortgagor for negligent performance of real property title examination; extension of liability rejected because "we deal with the attorney's liability to another where the attorney is also under an independent and potentially conflicting duty to a client"]; *Adams* v. *Chenowith* (1977 Fla.App.) 349 So.2d 230, 231 [seller's attorney in real estate transaction held not liable to buyer for negligent preparation of closing statement; attorney was hired by seller to be his representative and no representations were made that the attorney represented both parties; the "attorney's allegiance was solely to the sellers and there is no allegation the attorney intentionally misled anyone"].)

[8]Title 10, California Administrative Code, section 2785, subdivision (a)(3) provides: "Licensees shall not engage in 'fraud' or other 'dishonest dealing' or 'conduct which would have warranted the denial of an application for a real estate license' . . . including, but not limited to, the following acts and omissions: . . . [¶] (3) The failure by a licensee acting in the capacity of an agent in a transaction for the sale . . . of real property to disclose to a prospective purchaser . . . facts known to the licensee materially affecting the value or desirability of the property, when the licensee has reason to believe that such facts are not known to, nor readily observable by a prospective purchaser . . . ."

relationship—an attorney's duties to his or her client to keep confidences, to zealously represent the client, and to give undivided loyalty to the client. (See, e.g., Bus. & Prof. Code, § 6068, subd. (e); *Schullman* v. *State Bar* (1976) 16 Cal.3d 631, 636 [128 Cal.Rptr. 671, 547 P.2d 447].) Berger owed his allegiance solely to the Schumans, his clients. (See *Page* v. *Frazier, supra,* 388 Mass. at p. 63 [445 N.E.2d at p. 153]; *Adams* v. *Chenowith, supra,* 349 So.2d at p. 231.) He owed no duty to Heliotis.

■    Witkin sets out the four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 459-464; pp. 2724-2728.) Even construing all facts and inferences in Heliotis' favor as we must on appeal from a summary judgment (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Pereira* v. *Dow Chemical Co.* (1982) 129 Cal.App.3d 865, 872 [181 Cal.Rptr. 364]), none of these circumstances is present in this case. The trial court properly granted Berger's motion for summary judgment.

The judgments are affirmed.

Anderson, P. J., concurred.

**POCHÉ, J.,** Concurring.—Although in many instances where an attorney represents a seller of real estate the services performed and the fee governed are indistinguishable from what a licensed broker does and gets, I agree with the lead opinion's conclusion that a comparable duty of disclosure does not exist. I write separately to explain that I place my conclusion on the ground that this is an area solely for the Legislature. Nor has the Legislature been reticent. Any lawyers who believe that today's decision creates a new field of employment representing sellers who have something to hide should read with care Civil Code sections 1102-1102.13 which become operative January 1, 1987. That also leaves plenty of time for them and their clients to review the law of agency.

In all other respects I join in the reasoning and result of the lead opinion.

Appellant's petition for review by the Supreme Court was denied August 13, 1986.