Filed 5/31/13  Carroll v. Bank of America CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LINDA CARROLL, | |
| Plaintiff and Appellant, | E055209 |
| v. | (Super.Ct.No. RIC1104305) |
| BANK OF AMERICA, N.A. et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Paulette Durand-Barkley, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Chester Bennett for Plaintiff and Appellant.

Severson & Werson, Wendy Miele, Jan T. Chilton, Alisa A. Givental, and Jarlath M. Curran for Defendants and Respondents.

This is an action arising from defendants' attempts to foreclose on a trust deed secured by plaintiff's residence.  On September 20, 2011, the trial court sustained the demurrer of defendants Bank of America, N.A. (Bank of America), Countrywide Home Loans, Inc. (Countrywide), and Mortgage Electronic Registration Systems, Inc. (MERS)

1

(collectively, defendants) to plaintiff Linda Carroll's second amended complaint without leave to amend. Plaintiff appeals from the subsequent judgment.

On appeal, plaintiff argues that she alleged facts sufficient to state causes of action for (1) fraud by omission, (2) breach of fiduciary duty,[1] (3) breach of the covenant of good faith and fair dealing, and (4) injunctive relief. She also raises a number of other questions relating to the validity of her deed of trust.[2]

I

STANDARD OF REVIEW

A demurrer is used to test the sufficiency of the factual allegations of the complaint to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) The facts pled are assumed to be true, and the only issue is whether they are legally sufficient to state a cause of action.

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its

---

[1] The complaint does not contain a separate cause of action for breach of fiduciary duty. The opening brief states that plaintiff does not claim a fiduciary duty existed between lender and borrower. The complaint does contain an cause of action for "[l]ack of [s]tanding," which is more akin to a breach of contract claim.

[2] Plaintiff is reminded that the California Rules of Court, rule 8.204(a)(1)(C), provides that a brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."

parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.  [Citation.]"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Our standard of review is de novo: "Treating as true all material facts properly pleaded, we determine de novo whether the factual allegations of the complaint are adequate to state a cause of action under any legal theory, regardless of the title under which the factual basis for relief is stated.  [Citation.]"  (*Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th 479, 486.)

II

GENERAL ALLEGATIONS OF THE COMPLAINT

Plaintiff brought this action against defendants.  She alleges that Countrywide was acquired by Bank of America and that each of the defendants is the agent, representative, or nominee of the others.

In 2005, plaintiff purchased a home in Menifee, California.  She financed the property by obtaining a loan from Countrywide.  The loan was evidenced by two promissory notes and two deeds of trust.  The first promissory note is an adjustable rate

3

note for $388,800.[3]  The deed of trust lists Countywide as the lender and ReconTrust Company, N.A. as the trustee.

MERS is designated as the nominee of the lender.  The deed of trust states: "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument."

In 2008, plaintiff began suffering financial difficulties.  Since Bank of America had acquired Countrywide, plaintiff began negotiations with Bank of America to modify the loan.  However, a notice of default was served on her by ReconTrust Company on or about October 9, 2009.

The notice of default states: "To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason contact:  [¶]  Deutsche Bank National Trust Company, as trustee for Harborview [¶] 2005/07  [¶]  C/O BAC Home Leasing Servicing, L.P."  (Capitalization omitted.)  It also states: " . . . RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 03/09/2005, executed by Linda S. Carroll, an unmarried woman, as Trustor, to secure certain obligations in favor of Mortgage Electronic Registration Systems, Inc. as beneficiary recorded 3/18/2005 . . . ." (Capitalization omitted.)

---

[3]     The second promissory note is not in our record.

4

On October 16, 2009, all beneficial interest in the deed of trust and promissory note was assigned by defendant MERS to Deutsche Bank National Trust Company, as trustee for Harborview 2005-07.

A second notice of default was recorded on May 28, 2010. A notice of trustee's sale was recorded on September 7, 2010. The sale was scheduled for September 28, 2010, but was postponed.

III

PLAINTIFF'S FIRST CAUSE OF ACTION FOR FRAUD BY

NONDISCLOSURE (CIVIL CODE 1710 (3))[4]

A.   *Fraudulent Deceit*

Plaintiff's first cause of action is for fraudulent deceit. Section 1709 defines fraudulent deceit: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Deceit is defined in section 1710 to include "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact . . . ." (*Id.*, clause (3).)

Basically, plaintiff attempts to come within this definition by contending that the provisions of the deed of trust referring to MERS are unique and nonstandard provisions that were defective and ambiguous, with the result that the trust is nullified. Plaintiff

---

[4]   Unless otherwise indicated, all further statutory references are to the Civil Code.

5

alleges that the defendants failed to disclose "the nature and effect" of the language transferring legal title to MERS instead of the trustee. "Had defendants fully informed plaintiff of all facts and terms contained in the DOT [deed of trust] she would not have entered into the agreement with defendants."

Since plaintiff's first cause of action depends on her interpretation of the provisions in the deed of trust relating to MERS, we digress to discuss the general background of MERS.

B.      *The MERS System*

In *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1508-1511, we held that "[t]he courts in California have universally held that MERS, as nominee beneficiary, has the power to assign its interest under a DOT. Plaintiffs granted MERS such authority by signing the DOT." (*Id*. at p. 1498.) We relied on the general description of MERS in *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256 and *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149.

In *Fontenot,* the court said, "Plaintiff's claim against MERS challenges an aspect of the 'MERS System,' a method devised by the mortgage banking industry to facilitate the securitization of real property debt instruments. As described in *Mortgage Electronic Registration Systems v. Nebraska Dept. of Banking & Finance* (2005) 270 Neb. 529 [704 N.W.2d 784], MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local

governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. [Citation.] [¶] Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust. [Citation.] Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender. This aspect of the system has come under attack in a number of state and federal decisions across the country, under a variety of legal theories. The decisions have generally, although by no means universally, found that the use of MERS does not invalidate a foreclosure sale that is otherwise substantively and procedurally proper." (*Id.* at p. 267.)

In *Gomes*, Countrywide, MERS, and ReconTrust Company were defendants. (*Gomes v. Countrywide Home Loans, Inc., supra,* 192 Cal.App.4th at p. 1150.) The court sustained a demurrer without leave to amend. It stated, "The role of MERS is central to the issues in this appeal. As case law explains, 'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests

7

to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.' [Citation.] 'A side effect of the MERS system is that a transfer of an interest in a mortgage loan between two MERS members is unknown to those outside the MERS system.' [Citation.] [¶] The deed of trust that Gomes signed states that 'Borrower [(i.e., Gomes)] understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . .'" (*Id.* at p. 1151.)

Subsequently, in *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, we quoted *Gomes* and held that "[In *Gomes*], the court concluded that the plaintiff failed to identify a legal basis for an action to determine whether MERS had authority to initiate a foreclosure proceeding. [Citation.] We agree with the *Gomes* court that the statutory scheme (§ § 2924-2924k) does not provide for a preemptive suit challenging standing. Consequently, plaintiffs' claims for damages for wrongful initiation of foreclosure and for declaratory relief based on plaintiffs' interpretation of section 2924, subdivision (a), do not state a cause of action as a matter of law. [Citation.]" (*Robinson*, at p. 46, fn. omitted.)

C.    *Plaintiff's Contentions Regarding the MERS System*

Returning to the present case, plaintiff attacks the MERS system in a slightly different way. In the first cause of action, plaintiff alleges that the deed of trust contained a unique and nonstandard term because, on its face, legal title was transferred both to the trustee and to MERS. Plaintiff concludes that this alleged defect voids the deed of trust. This is alleged to be so because there is a merger of title and beneficial interest and, as a result of the merger, any lien upon the property was extinguished.

Further, plaintiff alleges that the transfer of legal title to MERS creates an inherent conflict in terms because legal title must reside in either the trustee or MERS, but not both. This ambiguity is also alleged to nullify the trust. Similarly, if MERS has legal title, plaintiff alleges that it has no obligation to reconvey the property when the promissory note has been paid in full.

Plaintiff also alleges that defendants must have been aware of the defect but failed to disclose it to plaintiff. If they had done so, plaintiff would not have entered into the agreement.[5] Plaintiff then alleges she suffered damages as a result of the nondisclosure, that the deed of trust was invalid, and that there was therefore no power of sale to serve as a basis for foreclosure.

---

[5]    Although we accept plaintiff's allegations as true for the purposes of deciding the demurrer, we note that if, as plaintiff alleges, the security for the loan was invalid, plaintiff would presumably be happy to accept the loan without giving any security.

Plaintiff's basic premise is that the deed of trust was fatally flawed because legal title was transferred *both* to the trustee and to MERS. Although we agree with plaintiff that the deed of trust is confusing, we find no fatal ambiguity.[6]

In a non-MERS deed of trust, the lender is the beneficiary and the trustee holds legal title to the property. However, under the MERS system, MERS acts as the beneficiary.[7] Thus, the deed of trust here provides for the transfer of the real property to the trustee, in trust, and defines MERS as the beneficiary. Countrywide is designated as the lender, and MERS is designated as the nominee of the lender.

However, after the statement that the property is transferred to the trustee, the deed of trust goes on to state that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including but not limited to, releasing and cancelling this Security Instrument."

---

[6]　A provision assigning legal title to MERS was also contained in the *Gomes* deed of trust, although the court does not discuss it. (*Gomes v. Countrywide Home Loans, Inc., supra,* 192 Cal.App.4th at p. 1151.)

[7]　The use of the term "beneficiary" is something of a misnomer, as explained in *Gomes.* (*Gomes v. Countrywide Home Loans, Inc., supra,* 192 Cal.App.4th at p. 1157, fn. 9.) It would be more accurate to say that the lender is the beneficiary and MERS is the agent of the beneficiary. Of course, under section 2924, subdivision (a)(1), MERS can initiate proceedings either as beneficiary or as agent of the beneficiary.

We agree with defendants that these two provisions can reasonably be construed to eliminate any ambiguity.

First, we focus on the paragraphs in which the provisions occur. The section, entitled transfer of rights in the property, begins by stating that MERS is the *beneficiary* of the deed of trust, solely as nominee for lender and lender's successors and assigns. Next, it states the deed of trust secures to *lender* the repayment of the loan and the performance of borrower's covenants and agreements under the deed of trust and note.

The section then provides for the transfer of the property to the *trustee*. It specifically defines the property as the real estate transferred together with improvements, easements, appurtenances, and fixtures to the property, including replacements and additions. The following sentence is the sentence that states that MERS has legal title. But the legal title is described as "only legal title to the interests granted by Borrower in this Security Instrument . . . ."[8]

---

[8] Because of its importance to plaintiff's argument, we set out the full text of the disputed provision: "The *beneficiary* of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to *Lender*: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to *Trustee*, in trust, with power of sale, the following described property . . . . [¶] . . . [¶] . . . Borrower understands and agrees that MERS holds only *legal title* to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." (Italics added.)

11

We agree with defendants that the interests granted by the borrower are different from the real property defined in the preceding sentence. Those interests are the interests secured to the lender as described in the preceding paragraph.

Second, this interpretation squares with the remainder of the deed of trust. As defendants remind us, the deed of trust has at least three provisions defining MERS as acting solely as nominee (agent) of the lender. MERS is therefore given only the powers, including the powers of a beneficiary, given to the lender as defined in the preceding paragraph of the trust deed and elsewhere. It has no other role to play. (*Fontenot v. Wells Fargo Bank, N.A., supra*, 198 Cal.App.4th at p. 273 [MERS acts only as an agent for the lender and not for its own interests].)

Third, our interpretation is consistent with the MERS system in general, as defined in *Gomes* and the other cases discussed above. (*Gomes v. Countrywide Home Loans, Inc., supra,* 192 Cal.App.4th 1149.) As defendants state: "The only difference from a traditional deed of trust is MERS' new role as beneficiary in a nominee capacity for Lender." (Fn. omitted.)

One effect of the MERS system is to allow the lender to assign the beneficial interest to MERS. "Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender." (*Fontenot v. Wells Fargo Bank, supra*, 198 Cal.App.4th at p. 267.)

12

In *Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 125, the court states, "MERS was both the nominal beneficiary and agent (nominee) of the original lender and also of HSBC Bank, which held the note at the time of the foreclosure sale of plaintiff's residence. Thus, MERS had the statutory right to initiate foreclosure on behalf of HSBC bank pursuant to section 2924, subdivision (a)(1)."

In addition, the court points out that, as in *Gomes*, the plaintiff agreed by signing the trust deed that "MERS had the right to initiate foreclosure and to instruct the trustee to exercise the power of sale as nominee (i.e., agent) of the original lender *and its successors and assigns.* [Citation.] HSBC Bank was the assignee of the original lender. Accordingly, HSBC Bank and MERS, its nominal beneficiary and agent, were entitled to invoke the power of sale in the deed of trust, and plaintiff has alleged no legal basis for setting aside the sale in this case." (*Calvo v. HSBC Bank USA, N.A.*, *supra*, 199 Cal.App.4th at p. 125.)

MERS is therefore the agent of the lender, and its authority is derived from the powers given to the lender.[9]

For example, the deed of trust gives the trustee (ReconTrust) the power of sale: " . . . Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property . . . ." But it also gives the lender (and its agent, MERS) the power to execute a notice of default and to elect to cause the property to be sold. MERS,

---

[9]    Although not raised by defendants, we note that plaintiff alleged in her complaint that each of the defendants was the agent of the other. Plaintiff concedes that MERS was acting as the agent of Countrywide.

as lender's agent, and others can also initiate nonjudicial foreclosure proceedings pursuant to section 2924, subdivision (a)(1),[10] but the deed of trust provides that it is the trustee (ReconTrust) that actually conducts the sale and delivers the trustee's deed.

Plaintiff also argues that the deed of trust did not meet her reasonable expectations. She argues both MERS- and non-MERS-related consequences in her attempt to state facts sufficient to state a cause of action. The non-MERS-related consequences are discussed in section D, *post*.

With regard to the MERS-related consequences, plaintiff argues five alleged consequences. Our interpretation of the allegedly conflicting provisions negates these claims.

One claim deserves further comment. Plaintiff contends that she is without a remedy if MERS fails to reconvey title upon full payment of the deed of trust, since "MERS . . . [is] under no contractual oblication to re-convey legal title." However, the deed of trust clearly states that MERS, as lender's agent, has the right to release and cancel the deed of trust. It also states that the lender can request the trustee to reconvey upon repayment of the loan. Plaintiff is not without a remedy in such a case.

---

**10** Section 2924, subdivision (a)(1) provides that, to begin foreclosure, "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein which the mortgaged or trust property or some part or parcel thereof is situated, a notice of default."

We therefore disagree with plaintiff's basic premise and conclude that the MERS terms in the deed of trust did not invalidate the deed of trust[11] or fundamentally alter the traditional form of a deed of trust to her prejudice.

D.      *The Non-MERS Allegations of the First Cause of Action for Nondisclosure*

Plaintiff has some difficulty in fitting her MERS allegations into a fraud by nondisclosure cause of action.

She relies primarily on *Lomanto v. Bank of America* (1972) 22 Cal.App.3d 663.  In that case, a deed of trust containing an after-incurred indebtedness clause was referred to as a contract of adhesion:  "'The term refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract due to the disparity in bargaining power between the draftsman and the second party must be accepted or rejected by the second party on a "take it or leave it" basis without opportunity for bargaining and under such conditions that the "adherer" cannot obtain the desired product or service save by acquiescing in the form agreement.'  [Citations.]"  (*Id.* at p. 668.)  But the court then found that there was no apparent ambiguity in the language used and noted that plaintiffs claimed they were not aware of the provision.  Plaintiffs alleged that the bank had a duty to call their attention to the questioned provision as a species of fraud.  "Thereby they assume Bank had a duty to call their attention to the provision.  We cannot say as a matter of law there was such a duty.  *If the provision is in*

---

[11]      In this regard, the parties do not discuss the effect of the severability clause in paragraph 16 of the deed of trust.

15

*the usual form of a trust deed, there was no such duty.*" (*Id*. at p. 669, italics added.) However, the court held that the question of whether the provision is within the usual form of a trust deed was a factual issue. (*Id*. at p. 670.) Accordingly, the case was reversed and remanded to allow one of the plaintiffs to amend if she so desired. (*Ibid*.)

While a deed of trust can be a contract of adhesion, the conclusion is not inevitable. For example, *Powell v. Central Cal. Fed. Sav. & Loan Assn.* (1976) 59 Cal.App.3d 540, 550-551 held that there is no contract of adhesion if the plaintiff is able to shop the market for better terms. Here, as in *Powell*, there were no such facts alleged, such as allegations that there were no other sources of funds were available to plaintiff or that competitors used similar forms. Such allegations could demonstrate a monopoly of supply or industry-wide usage of similar contract terms.

The words of *Powell* are applicable here: "Moreover, the issue of adhesion is not really involved. There is nothing sinful or illegal about a contract of adhesion; the only significant result of the existence of such a contract is that it is interpreted against the supplier of the goods or services (who prepared it) so as to meet the reasonable expectations of the customer. [Citation.] We have held that to the limited extent necessary to sustain a single increase in the interest rate, the notes are not ambiguous and there is no need for interpretation. Accordingly, the classification of the notes as contracts of adhesion, if such were otherwise appropriate, has no significance in this lawsuit." (*Powell v. Central Cal. Fed. Sav. & Loan Assn.*, *supra*, 59 Cal.App.3d at p. 551.)

16

It appears that plaintiff here has made allegations in the complaint with *Lomanto* in mind. But she fails to allege facts leading to the legal conclusion that the deed of trust was a contract of adhesion.

First, there are no facts alleged that would lead to a conclusion that the trust deed here was handcrafted for this borrower. On the contrary, the deed of trust itself is on a printed form entitled "CALIFORNIA Single Family – Fannie Mae/Freddy Mac UNIFORM INSTRUMENT WITH MERS." Immediately below this statement the form states it was prepared by a company named VMP Mortgage Forms.

The deed of trust specifically states that it "combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property." It then separates the uniform covenants from the nonuniform (California) covenants. There are four nonuniform covenants stated in paragraphs 22 through 25: acceleration, reconveyance, substitute trustee, and statement of obligation fee. The deed of trust was clearly not handcrafted but rather was intended for uniform national use with slight modifications for use in California. It shows on its face that it was not handcrafted by Countrywide for plaintiff.

Second, there is no allegation of facts sufficient to support a conclusion that the form was used by other companies in the local market so that plaintiff had to sign the form to get a loan from any company in that market.

17

Without such allegations, plaintiff cannot assume the deed of trust is a contract of adhesion. Since plaintiff has failed to allege such facts, she cannot successfully contend that the deed of trust did not meet her reasonable expectations.

Plaintiff also alleges that, if she had known of the terms she would not have agreed to the deed of trust. Although the allegation is questionable,[12] we accept it for purposes of the demurrer.

A cause of action for fraudulent deceit under section 1710, subdivision 3 also requires a duty to disclose the suppressed information. Plaintiff argues that there was a duty to disclose unusual terms placed in the deed of trust by defendant drafters. But the lender did not owe the borrower any fiduciary duty: "'[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender. [Citations.]' [Citation.] A commercial lender pursues its own economic interests in lending money. [Citation.]" (*Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 436.)

We therefore agree with defendants that plaintiff has not pleaded any facts showing special circumstances that would bring the transaction within any of the

---

**12**     As defendants put it: "Carroll's theory is that the deed of trust's provisions that she deems 'unusual' rendered the deed of trust null and void. [Citations.] Surely, if Countrywide had told Carroll it would lend her $388,000 without taking a valid security interest in her home, Carroll would have been delighted and [would have] eagerly accepted the proposed terms. Carroll alleges no facts to explain why she would have rejected such favorable terms if only she had been told about them. So she fails to allege actual reliance."

18

exceptions to the general rule that nondisclosure is not fraud. (*Heliotis v. Schuman* (1986) 181 Cal.App.3d 646, 651.)[13]

For these reasons, we conclude there was no such duty of disclosure here. There are insufficient allegations establishing that the terms of the deed of trust were unusual, nonstandard, or handcrafted. There were no allegations of active concealment or misleading partial disclosure. Accordingly, the lender had no duty to specially disclose the MERS provisions.

More generally, "we conclude that while Countrywide had a duty to refrain from committing fraud, it had no independent duty to disclose to its borrowers its alleged intent to defraud its investors . . . ." (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 872-873.)

Additionally, we note that the MERS provisions had no impact on the borrower. MERS merely acted as an agent for the lender to facilitate securitization of the deed of trust.

Plaintiff has also failed to allege facts showing detrimental reliance or proximately caused damages. In addition, plaintiff has not alleged any facts that would overcome the bar of the statute of limitations.

---

**13**    "Witkin sets out four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. [Citation.]" (*Heliotis v. Schuman*, *supra*, 181 Cal.App.3rd at p. 651.)

We therefore agree with the trial court that plaintiff failed to state facts sufficient to state a cause of action for fraud or deceit.

E.  *The Allegation of Intentional Infliction of Emotional Distress*

At the end of the allegations of the first cause of action, plaintiff adds a paragraph generally alleging that defendants' acts caused her emotional distress.  However, the courts recognize that the mere act of attempting to collect a debt may give rise to emotional distress.  Collection activities become actionable only when the creditor uses outrageous and unreasonable means of collection.  (*Ross v. Creel Printing & Publishing Co., Inc.* (2002) 100 Cal.App.4th 736, 745.)  No such conduct is alleged here, and no facts are alleged which could possibly support a cause of action for emotional distress.

IV

PLAINTIFF'S SECOND CAUSE OF ACTION FOR BREACH OF

THE COVENANT OF GOOD FAITH AND FAIR DEALING

Under this heading, plaintiff simply argues that the parties had a contractual and financial relationship and that there was an implied covenant of good faith and fair dealing.  Plaintiff then alleges breach of the covenant by the acts discussed above and claims resulting damages.

Defendants respond by arguing that the alleged nondisclosure of "unusual" terms, as pleaded in the first cause of action, cannot be the basis for the cause of action because there was no such nondisclosure and because the implied covenant is not applicable during negotiations for a contract: "Insofar as these allegations assert that Octagon

20

violated the implied covenant during the negotiations of the lease, they fail to state a claim. As the court explained in *Racine & Laramie, Ltd. v. Department of Parks and Recreation* (1992) 11 Cal.App.4th 1026, 1031-1035 [14 Cal.Rptr.2d 335], the implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 799.) No other facts are pleaded that could provide the basis for a cause of action for breach of the implied covenant of good faith and fair dealing. Accordingly, the trial court did not err in sustaining defendants' demurrer to this alleged cause of action.

V

PLAINTIFF'S THIRD CAUSE OF ACTION FOR LACK OF STANDING

The basis for this cause of action was that defendants allegedly failed to give notice of acceleration of the note pursuant to section 22 of the deed of trust. According to plaintiff, notice of acceleration is a condition precedent to foreclosure.

The complaint alleges that lender possessed the contractual right to accelerate payments due under the note upon a breach by borrower. Notice of election to accelerate must be given to the buyer before the power of sale can be used. Plaintiff alleges that no such notice was given to her. She therefore requests that the notices of default be set aside and the pending foreclosure sale be cancelled. Since there has allegedly been no notice of acceleration, plaintiff further alleges that she can continue to make monthly payments. Since defendants have allegedly refused to accept such payments, she

21

contends that she is not in default and that defendants do not have standing to proceed with foreclosure.

Section 22 of the deed of trust is set forth in the footnote.[14]  Plaintiff reads the section to mean that the notice of acceleration must be given after the date given in the notice of default for curing the default and prior to invoking the power of sale.

Defendants contend that they actually gave notice of acceleration on February 5, 2009.[15]  Such a notice is not in our file, and we have not taken judicial notice of such a document.

Defendants also contend that the notice of default provided the requisite notice under section 22.[16]  It notified plaintiff she was in default; it told her how to cure the default; it gave her time to do so; and it told her that, after expiration of the stated time, she could stop the sale by paying the entire amount due.

---

[14]     "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the property. . . .  If the default is not cured on or before the date specified in the notice, Lender at its option may require payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law . . . ."

[15]     Defendants cite Supplemental Clerk's Transcript, page 45.  That page is a messenger delivery form that does not identify any document. The prior page is the first page of a declaration of a Bank of America employee.  The subsequent pages are missing and, in any event, we would not consider them on demurrer.

[16]     Two notices of default were given here, and defendants thus argue that plaintiff had ample time to cure her default.

Defendants concede, however, that there are two defects in the notice of default: (1) it was not sent preacceleration; and (2) it did not inform plaintiff that she could "'bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.'"  Defendants argue that there was nevertheless substantial compliance with the requirements of the deed of trust, citing *Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221, 1238.)

Plaintiff was not prejudiced by any of the alleged procedural errors.  (*Herrera v. Federal National Mortgage Assn., supra,* 205 Cal.App.4th at pp. 1507-1508; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 93-95.  In the absence of any facts that would support a conclusory allegation of prejudice, we agree with defendants and the trial court that plaintiff has failed to state facts sufficient to establish a cause of action either for lack of standing or breach of contract.

In addition, as described more fully above, we have endorsed the holding of *Gomes* that "the statutory scheme (§§ 2929-2924k) does not provide for a preemptive suit challenging standing."  (*Robinson v. Countrywide Home Loans, Inc., supra*, 199 Cal.App.4th at p. 46.)

We therefore conclude that the trial court did not err in sustaining the demurrer to this alleged cause of action.

## VI

## PLAINTIFF'S FOURTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF

Finally, plaintiff seeks injunctive relief to prevent a foreclosure during the pendency of the action. Plaintiff does not discuss this alleged cause of action in her brief. Defendants point out that injunctive relief is generally considered to be a remedy, not a cause of action, citing *McDowell v. Watson* (1997 59 Cal.App.4th 1155, 1159 (Fourth Dist., Div. Two). It does not stand independently but rather provides relief when a primary right is violated. (*Ibid.*) Since there is no other legally sustainable cause of action alleged here, the cause of action for injunctive relief also fails.

## VII

## LEAVE TO AMEND THE COMPLAINT

Finally, plaintiff argues that she sought to amend the complaint to allege a new cause of action under section 2932.5, and the trial court did not act on her request.

However, the trial court did sustain the demurrer without leave to amend. It did not abuse its discretion in doing so because recent cases have held that section 2932.5 applies only to mortgages, not to deeds of trust. (*Herrera v. Federal National Mortgage Assn., supra*, 205 Cal.App.4th at pp. 1508-1511; *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329; *Calvo v. HSBC Bank USA, N.A., supra*, 199 Cal.App.4th at pp. 122-123.) Plaintiff would therefore be unable to state a cause of action under that section.

## VIII

## DISPOSITION

The judgment is affirmed.  Respondents shall recover costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RICHLI _____

Acting P. J.


We concur:


MILLER _____

J.


CODRINGTON _____

J.